THE COMPANY FOR ERECTING AND SUPPORTING A TOLL BRIDGE FROM NEW HAVEN TO EAST HAVEN *vs.* WILLIAM BETSWORTH.

The plaintiffs were a corporation owning a toll bridge, through which was a draw for the passage of vessels, the charter requiring them to keep a draw-tender and to open the draw for vessels desiring to pass through. A general statute required vessels passing through any such draw to warp through and not to sail through, and imposed a penalty for the violation of the act. The defendant in passing with his vessel through the draw, which had been opened by the draw-tender for him to pass, sailed through instead of warping through, and in so doing was driven against the side of the draw and injured it. In an action brought by the company for the damage, the defendant claimed that the plaintiffs had by long use licensed vessels to sail through, and offered evidence of declarations made by the draw-tenders at various times when vessels were passing through under sail, that they preferred to have them go through in that manner. Held,

1. That evidence of these declarations was admissible, as the declarations of the agents of the company while in the discharge of their duties as such agents.

2. That the defendant was not precluded from setting up the license in defense by reason of the statute forbidding the sailing of vessels through such a draw, the license being merely a waiver on the part of the plaintiffs of all claim for damage caused by that mode of passing through, and not affecting the liability of the defendant to the penalty for the public offense.

The declarations of an agent of a corporation as to the matter in his charge, accompanying his acts as agent, stand on the same ground with the acts themselves, and both go to show what has been the conduct of the corporation in the matter to which they relate.

As a general rule, what the directors of a corporation know regarding matters affecting the interests of the corporation, the corporation will be held to know, and knowledge on the part of the directors may be inferred from circumstances, and it is not always necessary to show it by direct proof.

ACTION of trespass, with a count in case, for an injury to a draw bridge of the plaintiffs by the vessel of the defendant in passing through the same ; tried to the jury in the superior court on the general issue, with notice of the matters of defense hereinafter stated, before *Waldo, J.*

The plaintiffs were a corporation, chartered by the general assembly in 1796, for the purpose of erecting and maintaining a toll bridge across the Quinnipiac river between New Haven and East Haven ; the charter providing that they should keep a suitable draw in the bridge for the passage of vessels, and that the same should be opened by a draw-tender employed by the company, upon reasonable notice given, whenever vessels should desire to pass. The bridge was soon after built and had ever since been maintained by the plaintiffs, the draw being of the width of fifty-five and a half feet, and being in good condition at the time of the injury done to it by the defendant's vessel. A general statute with regard to draw-bridges, passed in the year 1826, and in force at the time of the injury, provided as follows :—

" Any steamboat or other vessel, when passing the draw of any bridge, shall, before entering such draw, stop the motion which has been communicated by the machinery or sails, and shall warp or be drawn through such draw, without the aid of sails or machinery.

" If any person commanding or navigating any such boat or vessel shall violate the preceding section, he shall forfeit the sum of twenty dollars, one half to him who shall prosecute to effect, and the other half to the treasury of the town in which the offense shall be committed."

The defendant, in command of the schooner Addie E. Barnes, on the 21st of September, 1859, gave notice to the draw-tender of his desire to pass through the draw from the upper side where he was at anchor. The draw-tender opened the draw, and the defendant thereupon weighed anchor, hoisted his jib and mainsail, and undertook to sail through, but in passing was driven with such force against the side of the draw as to cause the injury complained of. The plaintiffs claimed on the trial, and the defendant denied, that the injury

was caused by the negligent and unskillful management of the vessel, and evidence was introduced on both sides on this subject.

The defendant offered evidence tending to prove that the plaintiffs, by their conduct for more than thirty years continuously, and up to the time of the injury complained of, had given notice to the public, and to the defendant, that vessels belonging to owners residing in Fair Haven above the bridge, where he himself resided, having occasion to pass through the draw, might, so far as the interests of the plaintiffs were concerned, sail through instead of being hauled or warped through, and that this mode of passing was preferred by the plaintiffs, because taking less time and occasioning less detention than the other modes, and causing less interruption to travel over the toll bridge ; and that the defendant, well knowing this, and having frequently himself, for several years preceding, whenever he had occasion to pass through the draw, sailed his vessels through with the consent of the plaintiffs, did, on the occasion mentioned in the declaration, in the usual and customary manner, avail himself of this consent manifested as before mentioned, and sailed his vessel through the draw in a prudent, careful and skillful manner. The defendant claimed this evidence to be admissible to prove an established custom of the owners of vessels residing in Fair Haven, to sail through the draw, and as a license from the plaintiffs to such owners, and to the defendant, to pass through in that manner. To the admission of this evidence the plaintiffs objected, on the ground that if the facts were proved the license was illegal and void, and constituted no justification or excuse for the injury complained of, and for which they only claimed to recover the damages actually sustained. By the consent of the parties the evidence was received subject to objection, to be disposed of by the court in the charge to the jury.

The defendant offered the testimony of several masters of vessels who had for many years been engaged in the navigation of the Quinnipiac river to and from Fair Haven, and had passed with their vessels through the draw of the plaintiffs'

bridge many times in each year for more than twenty years, that they and other captains of vessels usually navigating the river, (including the defendant, as master of sundry vessels during a period of eleven or twelve years,) had been accustomed, without objection on the part of the draw-tender, or on the part of the plaintiffs, to pass through the draw under sail when the wind and tide were favorable, and that they were warped or drawn through only when the wind and tide were unfavorable to sailing; that though during this time vessels from Fair Haven and elsewhere, having occasion to pass the draw in either direction, had frequently been warped through, yet by far the greater part were in the practice of sailing through, and always did so unless prevented by wind or tide; and that the plaintiffs had not furnished any conveniences to vessels for warping or being hauled through the draw. No evidence was offered to prove, nor was it claimed, that any of the directors of the plaintiffs' corporation had expressly authorized any of these persons, or the defendant, to pass through the draw with their vessels in any other manner than by warping, and the plaintiffs objected to the testimony as inadmissible either to prove the custom claimed, or a license by the plaintiffs to the defendant, and claimed that the custom if proved would be illegal and void, the statute forbidding the passing of vessels under sail through the draw, and no license or custom in violation of the statute being of any effect. But the court overruled the objection, and admitted the evidence as tending to prove a license, to be subject to such qualifications as should be contained in the charge to the jury.

The defendant, for the same purpose, offered in evidence the declarations of sundry persons, who, for the last eleven or twelve years, had been placed by the plaintiffs in charge of the draw, for the purpose of opening the same for the passage of vessels, to the effect that they would prefer that vessels should sail through rather than be hauled through, for hauling detained passengers on the bridge longer than sailing through; which declarations the defendant claimed were made to masters of vessels when passing through the draw with their

vessels, and while the draw-tenders were acting in the course of their employment in having charge of the draw and while actually engaged in opening and keeping open the draw for the passage of such vessels through the same. No evidence was offered in connection with this testimony, that the draw-tenders or any one of them had any authority from the plaintiffs to make such declarations, or to affect the plaintiffs thereby, other than such as was incident to their employment by the plaintiffs to tend the draw and to collect tolls from persons crossing the bridge. To the admission of this evidence the plaintiffs objected, on the ground that the draw-tenders, being employed by the plaintiffs for the mere purpose of collecting their tolls from persons crossing the bridge, and tending the draw as required by law, it was not within the scope of their authority to bind or in any manner affect the plaintiffs by such declarations. But the court overruled the objection and admitted the evidence to go to the jury, subject to such qualifications as should be stated to them in the charge.

The court charged the jury as follows:—" The plaintiffs insist that by the 37th section of the statute concerning highways and bridges, it was the duty of the defendant when passing the draw of this bridge, before entering it, to stop the motion which had been communicated to his vessel by her sails, and then to warp or be drawn through the draw ; and they insist that if he neglected this duty, and an injury in consequence of such neglect accrued to the plaintiffs, the defendant is liable to make satisfaction to the plaintiffs for the injury in this action. This claim of the plaintiffs is founded upon this common and reasonable principle, that when a man negligently omits to perform some duty which occasions an injury to another, he is liable to make compensation for such injury. To lay a foundation for a recovery in a case of this kind, two things must concur. First, a duty negligently omitted ; and second, consequent damage to the claimant. Applying this principle to the case under consideration, if the jury shall find that the defendant did not stop the motion which had been communicated by his sails to his vessel before

Toll Bridge Co. *v.* Betsworth.

he entered this draw, and that in consequence of this omission the plaintiffs' draw was injured without any fault on their part, then the defendant will be liable to pay the plaintiffs the damages they have sustained by the injury; unless the jury shall further find that the defendant had authority or license from the plaintiffs to pass their draw without attending to the duty imposed by this statute. The plaintiffs could not give the defendant any authority or license that would relieve him from the penalty he would incur in passing their draw without stopping the motion communicated to his vessel by her sails, nor could the defendant by any use obtain this immunity; but for the purposes of this trial the jury will understand the law to be, that so far as the plaintiffs' right to recover damages for such omission is concerned, they might, by their own acts, waive any benefit they derived from the statute; and if you shall find that the plaintiffs had given a general license to all navigators to pass their draw with sails, without stopping the motion of their vessels before entering the draw, or if the plaintiffs had given a license to the defendant to so pass their draw, either generally or in this particular instance, they can not now complain of the act which has been done under their license, and the defendant in such case will not be liable in this action.

" The defendant claims that the plaintiffs, long anterior to, and up to the time of the injury complained of, gave public notice by their acts that all vessels having occasion to pass their draw, and particularly vessels from Fair Haven, might, so far as the interests of the plaintiffs were concerned, sail through the draw, instead of going through by warping, or by being hauled through; and in this way gave them license so to pass; and he has offered the testimony of masters of vessels, tending to show that the general if not universal course pursued in passing through this draw, has been to sail through it whenever the wind would permit, and that this has been done without any objection on the part of the plaintiffs. I do not entertain any doubt that the fact that vessels have passed this draw under sail with the knowlege of the plaintiffs, and without objection on their part, is evidence tending to prove a

license so to pass; but its weight is to be determined by you. Standing by itself it would be far from being conclusive evidence of the fact. Its force must depend upon the extent of the practice, the opportunities the plaintiffs or their agents had to object, and all the circumstances. This evidence is not received to prove a custom, to do away with the effect of the statute referred to, nor to establish a prescriptive right in this defendant; but for the sole purpose of establishing a license to masters of vessels to pass through the draw under sail without liability to the plaintiffs.

"The defendant insists that the agents of the plaintiffs who have had the charge of this draw have given license to masters of vessels to pass this draw under sail. An agent is one who is constituted the representative of his principal in the transaction of certain business. Whatever, therefore, the agent does in the lawful prosecution of that business, is the act of the principal whom he represents. And when the acts of the agent will bind the principal, then his representations, declarations and admissions, made at the same time, respecting the subject matter, will also bind him, and constitute a part of the *res gestæ.* It is upon this principle that I have permitted the declarations of the tenders of this draw to be given in evidence, when made while they were engaged in opening the draw, and while vessels were passing through it."

The jury returned a verdict for the defendant, and the plaintiffs moved for a new trial for error in the rulings and charge of the court.

*Baldwin* and *Wayland*, in support of the motion.

The defense rests on the single point, that by the acts and declarations of the draw-tenders employed by the plaintiffs, the defendant was exonerated from all liability to the plaintiffs for damage done to their bridge by the collision complained of. It is the policy of the law to keep evidence of this nature within the strictest limits to which the cases have confined it. *Fairlie* v. *Hastings,* 10 Vesey, 126. *Garth* v. *Howard,* 1 Moore & Scott, 628. Such evidence càn never be received unless a legal identity is established between the principal and

his agent. 1 Greenl. Ev., § 114. The draw tenders being special agents of the plaintiffs to perform particular and specified duties, could not bind their principals by any acts or declarations not within the scope of their authority. 1 Private Acts, 241–244. 3 id., 283. *Fenn* v. *Harrison*, 3 T. R., 760. *Rossiter* v. *Rossiter*, 8 Wend., 494. *Munn* v. *Commission Co.*, 15 Johns., 54. *Beals* v. *Allen*, 18 id., 366. *Anderson* v. *Coonley*, 21 Wend., 279. *Dresser Manufacturing Co.* v. *Waterston*, 3 Met., 18. *Schumack* v. *Lock,* 10 J. B. Moore, 39. *Angel* v. *Pownal*, 3 Verm., 461. 1 Am. Lead. Cases, 544. Chitty on Cont., 219. The powers and privileges of the corporation are fixed by their charter, and beyond these no authority can be given, inferred or implied. *Wyman* v. *Hallowell & Augusta Bank*, 14 Mass., 62. *Salem Bank* v. *Gloucester Bank*, 17 id., 28.

But the act of passing through the draw in the manner in which it was done by the defendant, was in direct violation of law, and he can not set up in his defense a license to do an act thus unlawful. The statute expressly forbids any sailing vessel to pass through any draw under sail, or in any manner except by warping or being hauled through. Rev. Stat., tit. 24, § 37. No party, whether plaintiff or defendant, can found his claim or defense on an illegal act, or, in other words, whenever it is necessary for the party to set up the attempt to do an illegal act as the ground of claim or defense, he must fail. Public policy forbids it. Any contract even, in violation of a public statute, is void, whether *malum prohibitum* or *malum in se*. Any other rule would tend to encourage acts which public policy forbids. " It is a general rule that the law will furnish no aid to a man who has been concerned in an illegal transaction." 1 Swift Dig., 219. Thus where two boxed by consent, and one was injured, it was held that there could be no recovery by the party injured. " As the act of boxing was unlawful the consent of the parties to fight could not excuse the injury." 1 Swift Dig., 479. Buller N. P., 16. *Weaver* v. *Ward*, Hobart, 134. *Matthew* v. *Ollerton*, Comb., 218. *Olding* v. *Smith*, 11 Eng. Law & Eq., 424, 432. 1 Stephen N. P., 211. *Stout* v. *Wren*, 1 Hawks, 420.

*R. I. Ingersoll* and *C. R. Ingersoll*, contra.

The ruling of the court admitting evidence of the license claimed by the defendant is complained of, on the ground that the passage through the draw under sail was an unlawful act, which the plaintiffs could not license. But the object of the license was not to relieve the defendant from the penalties of the statute by making any act lawful which the statute declares unlawful. The act declared unlawful by the statute is the passing through the draw under sail. Its lawfulness is not at all affected by the question whether or not the bridge receives any injury thereby. There is the same violation of the statute in the one case as the other. But the plaintiffs, as owners of the bridge, have rights of property which may or may not be imperiled by the passage of the draw under sail; and it is for the injury to those rights of property that they now seek to recover. Now the defendant had no occasion to ask of the plaintiffs a license to pass the draw under sail, except as such a passage might imperil their property. It would have been very absurd for him to have sought from them, or for them to have assumed to grant to him, the right to pass through the draw under sail, if there was no risk to their bridge in such a passage. The license, therefore, which the plaintiffs granted, was not a license to violate the statute, but a license to do what was in no sense a violation of any law, that is, so to use the plaintiffs' property that if, without any fault or want of care on the defendant's part, that property should be injured, he should not be regarded as a trespasser, and required to compensate the plaintiffs therefor in damages. The injury to the plaintiffs' bridge, if done without a license, would have been simply a violation of private right, which the plaintiffs could have completely discharged at once. And this is all that is implied by the license given by them to the defendant. The plaintiffs, between their conflicting interests as toll gatherers on the one hand, and draw-tenders on the other, concluded that it would be, on the whole, for their advantage to run the risk of having their bridge injured by vessels sailing through it, rather than to submit to the obstructions to travel over the bridge, and consequent loss of toll,

which the warping of vessels through the draw would necessarily occasion. In this view of the case it is clearly distinguishable from the old cases cited on the other side, where it was held, that "if one licenses another to beat him, such license is void, because it is *against the peace.*" There the beating, which was the thing licensed, was something more than an injury to the person beaten, it was an offense against the public peace. If the thing licensed had been simply the private injury, and not inseparably connected with and undistinguisha ble from the public offense, the license would have availed as a defense. In commenting upon this class of cases, the court, in a recent English case, (*Christopherson* v. *Bare*, 11 Adol. & El., 473,) say:—" It is a manifest contradiction in terms to say that the defendant assaulted the plaintiff *by his permission.*" And Mr. Hilliard, in his treatise on Torts, vol. 1, p. 191, defines an assault and battery as " a fighting *against the will of the party assailed.*" If the omission to follow the requirements of the statute was a culpable want of care in the defendant, so was the conduct of the plaintiffs in opening the draw for him to pass under sail, and thereby, as well as by their license otherwise, inviting him to pass in that manner. Their negligence or fault contributed to, if it did not cause, the negligence or fault on his part; and therefore they ought not to recover. 1 Hilliard on Torts, 132. *Bosworth* v. *Swansey*, 10 Met., 363. *Spoor* v. *Spooner*, 12 id., 281.

The declarations of the draw-tenders and toll-gate keepers were admissible upon the principles stated in the charge. 1 Greenl. Ev., § 113. They were not only placed in charge of the draw by the plaintiffs for the purpose of opening it, but the plaintiffs' charter contemplates the draw-tender as the representative of the company in matters relating to the passage of the draw. 1 Private Acts, 243. Their acts, there fore, if lawful, were unquestionably within the scope of their authority. And, even if not lawful, if done *bona fide* in pur suance of a general authority in relation to the subject, or if known to the plaintiffs and no objection was made by them, the corporation is bound by them. Ang. & Ames on Corp., §§ 304, 311.

Toll Bridge Co. v. Betsworth.

DUTTON, J. Two questions are presented in this case; one whether evidence of a license was admissible, the other whether, if so, the declarations of the draw-tenders were admissible to prove the license.

As to the first, it will require very little argument to support the decision of the judge below. The plaintiffs, so far as this question is concerned, claim damages, not on the ground that they have sustained an injury from any negligent or willful act of the defendant, but because the damage which they received was owing to the violation by the defendant of a statute law of the state. Rev. Stat., tit. 24, sec. 37. It is a sufficient answer to this claim to say, that the statute in question was passed to protect the rights either of the plaintiffs, or of the public, or both. So far as it was intended for the benefit of the plaintiffs, most obviously they could license the act or waive a remedy for the injury. 1 Hilliard on Torts, 168, 191. So far as it was designed to protect the public, most clearly this corporation never was constituted the guardian of their rights. The statute itself has prescribed the penalty, and the mode of enforcing it. The counsel for the plaintiffs rely chiefly on a few passages in 1 Swift's Digest, p. 479, to the effect that the defendant in an action of trespass can not avail himself of a license by the plaintiff to do an illegal act. This doctrine is sustained apparently by the case of Stout v. Wren, 1 Hawks, 420, in which the court followed an old case in Comberback, and a dictum in Buller's Nisi Prius. In these authorities the learned jurists do not seem to have noticed the marked distinction between the effect of licenses on public and on private prosecutions. An action of assault and battery to recover for injuries received in a duel, or in a pugilistic contest, would be an absurdity in theory and a novelty in practice.

The objection to the declarations of the draw-tenders has more plausibilty but no better foundation. These were made to the masters of vessels by the draw-tenders, when acting, as the motion states, in the course of their employment in having cha·ᵧ ᶠ the draw, and while actually engaged in opening and kee⳽ ᴐpen the draw for the passage of vessels through

the same. They were to the effect that the draw-tenders would prefer that vessels should sail through rather than be hauled through. If the president of the company had stood by the bridge and had made such declarations to the masters of vessels while passing through, it would hardly be contended that this would not be evidence from which the jury would have a right to presume that they were communicated to the defendant and would justify his sailing through.

But it is urged that the draw-tenders had no right to make these declarations and affect the company thereby. If they made them with the knowledge and assent of the company they clearly had. But the knowledge, intentions and purposes of a corporation can generally only be known by the declarations and conduct of its directors and other principal officers while in the discharge of their duties. As a general rule, what the directors know regarding matters affecting its interests, the corporation knows. Ang. & Ames on Corp., § 306. The knowledge of the directors may often be inferred from circumstances. It is usual to appoint a considerable body of directors chosen with reference to their location, and their means of becoming acquainted with whatever will promote or impair the interest of the corporation. The object of this is to enable them, at their regular meetings, to avail themselves of the information thus acquired.

This bridge was, so far as we know, the only property of these plaintiffs. The draw-tender was one of the most important agents of the corporation, as on his management of the draw its pecuniary interests were dependent. It was the duty of the president and directors to watch his conduct, and see whether he was attentive and faithful in discharging his duties and in protecting the rights of his employers. The jury would therefore have a right to presume that some of the directors would know what he was accustomed to say and do in the discharge of his duties, that this knowledge would be communicated to the board of directors, and that the board would take some action on the subject if they disapproved of his conduct.

Besides, these declarations may well be considered as a part

of the *res gestæ.* The question was, how did the company conduct itself in the management of the draw. This could only be answered by showing what was said, as well as what was done, by its agents who had the charge of it. 1 Greenl. Ev., § 113.

A new trial is not advised.

In this opinion the other judges concurred.