# F. F. PORTER *v.* HAWAIIAN PORK PACKING COMPANY, Limited.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED MARCH 21, 1898.     DECIDED JULY 18, 1898.

### JUDD, C.J., FREAR AND WHITING, JJ.

A leased to B certain premises; B to deliver to A all hogs B had for slaughtering and to pay A 40 cents a head, provided A slaughtered to the satisfaction of B; A to feed, water and care for the hogs and to slaughter them in a skillful and workmanlike manner and to B's satisfaction; and in case A should fail in any respect to perform his part to the satisfaction of B, B to have the option to occupy the premises for the term agreed at a rental of $360 per annum. It was subsequently agreed that in case the slaughtering was not satisfactory, B should have the option of quitting the premises and ceasing to pay rent. Held, B could exercise his options, not at will, but only in case A should not in B's opinion, perform his work properly, B being sole judge as to whether the work was performed properly. *Rawlins v. Honolulu Soap Works Co.,* 9 Haw. 262, distinguished.

#### OPINION OF THE COURT BY FREAR, J.

This is an action of assumpsit for breach of a written contract. The plaintiff claimed $2000 damages and obtained a verdict for $957.40. Defendant took a number of exceptions to rulings made during the trial as well as an exception to the overruling of a motion for a new trial. The most important of these exceptions relate to or involve the construction of the contract, which is as follows:

"This indenture made this 10th day of March, A. D. 1892, by and between F. F. Porter, of Honolulu, Island of Oahu, Hawaiian Islands, of the first part, and The Hawaiian Pork Packing Company, Limited, a corporation established and existing under and by virtue of the laws of the Hawaiian Islands, of the second part, witnesseth:

"That the party of the first part in consideration of the agreements below contained on the part of the second part, doth demise and sub-lease unto the party of the second part one-half of the building now occupied by him at Iwilei, Honolulu, on premises held under lease from John Ena, to wit, that portion of said building being 50 feet by 50 feet nearest the sea; and also such portion of the land in said lease now unoccupied as the party of the second part may desire for erecting buildings on and for yard room, together with a free right of way of sufficient width for teams to and from the said premises and the road.

To have and to hold for the remainder of the term of said lease, to wit, until July 1st, 1898.

And the party of the second part, for itself, its successors and assigns, agrees that during said term it will deliver to the party of the first part for slaughtering all hogs which it may have for slaughtering; and will do no slaughtering in Honolulu, nor employ others to do it provided said party of the first part performs the same in a manner satisfactory to the party of the second part; and will pay to the party of the first part the sum of forty cents (40) per head for each hog slaughtered for it, the same to be payable monthly; and will provide the necessary feed for all of their hogs while on said premises.

And the party of the first part in consideration aforesaid, for himself, his executors, administrators and assigns, agrees that for the said price he will perform all the labor of feeding and caring for said hogs while on his premises until slaughtered; that he will furnish water for said hogs, and will bear all expenses while they are on said premises, other than the costs of feed; and will slaughter all of such hogs as he is directed to slaughter in a skillful and workmanlike manner and to the satis-

faction of the party of the second part, and at such times as he may be directed; and further agrees that during said time he will allow no slaughtering to be done on his premises at Iwilei other than the hogs of the party of the second part.

And it is mutually agreed that in case said F. F. Porter in any respect fails to carry out his said agreements to the satisfaction of the party of the second part, that the party of the second part may continue to occupy the above demised premises for the term above named paying the rent of three hundred and sixty dollars per annum."

Subsequently another contract was made as follows:

"Honolulu, H. I., February 17, 1896.

"In consideration of Wm. McCandless and E. C. Winston purchasing the eight (8) shares held by me in the Hawaiian Pork Packing Co., Ltd., I hereby grant them the privilege of removing pig pens and other property belonging to the above company at any time that they may desire as well as all other privileges in regard to right of way, &c., as exist at present in accordance with my agreements made with the Hawaiian Pork Packing Co., Ltd., and further that in the event of the slaughtering of hogs not being done to the satisfaction of Wm. McCandless and E. C. Winston they shall be allowed to conduct their own slaughtering business without any charge for rent of premises, provided that they shall conduct the same on other premises than those referred to in last clause of agreement dated March 10, 1892.

(Sig.)                                    F. F. Porter."

Defendant quit the premises mentioned in these contracts and discontinued delivering hogs to plaintiff for slaughtering and at the trial attempted to justify by showing that plaintiff did not do his work to its satisfaction. The question raised by the exceptions is, what significance has the word "satisfaction" in these contracts? It is usually difficult to construe a contract which is to be performed by one to the satisfaction of another. There are various constructions that may be put upon such a

contract, according to the other language and the subject matter of the contract and the circumstances of the case. For instance, as pointed out in *Rawlins v. Honolulu Soap Works Co.*, 9 Haw. 262, the word "satisfaction" may be used in such a general way that, especially if it is coupled with other words of option, the contract will be terminable at the will or whim of the person to be satisfied. The contract in question is clearly not of that character. The parties evidently intended that good work should be done by the plaintiff and that defendant was not to exercise the option provided for in the last paragraph of the first contract or that in the second contract, unless in its opinion the plaintiff actually failed to do good work. But while it is true that defendant's performance is not merely optional, it does not necessarily follow that the test as to whether it could exercise the options provided for in the contracts is merely or solely whether the plaintiff did good work. If that were so, then, as was held in the *Rawlins'* case under the contract there involved, the jury would be the ones to pass upon the question whether the work was done skilfully and properly, and if they so found, it would be equivalent to finding that the defendant was satisfied, for it was bound to be satisfied if the work was well done. There is a third possible construction,—intermediate between the one that the performance is optional upon the part of the party who is to be satisfied and the one that performance is required on that one's part unless the other fails to do good work. Under this construction good work is required but the party who is to be satisfied is made sole judge as to whether the work is good. Whether the work is well done is not to be decided by the jury as the sole test of whether the party is satisfied. The question is not whether he ought to be satisfied but whether he is satisfied—not indeed whether he is satisfied with the contract or all of its terms, but whether he is satisfied that the work itself is done in a skillful and workmanlike manner as required by the contract. Evidence would be admissible to show whether the work was well done or not, for this would tend to show whether the party to be satisfied was in fact satisfied or not with the manner in which the work was done or whether he was merely

dissatisfied with the contract as a whole or with some of its terms and wished to terminate it for some other reason than that he was satisfied that the work was not properly done. The question for the jury would be whether on all the evidence the defendant was actually satisfied that the work was not properly done—the question whether in the opinion of the jury it was properly done being a subordinate question tending to throw light on the main question. The trial judge's view as shown by his rulings and instructions evidently was that the jury was to pass upon the question whether the work was well done or not and that this was equivalent to passing upon the question whether the defendant was satisfied or not. In this there was, as we believe, error for which a new trial should be granted.

This contract differs from that in the *Rawlins'* case. In each case good work was contemplated—not merely work to the satisfaction of whims or peculiar tastes. But in the present case there is much more than there was in that case to show that the defendant was to be sole judge of the satisfactoriness of the work. In the present case the word "satisfactory" or "satisfaction" occurs three times in the first contract and once in the second, and in three of these instances it is unqualified in terms. In the other instance it is coupled with the words "skillful and workmanlike manner," used with reference to the slaughtering of hogs. There were other things to be done by the plaintiff besides slaughtering hogs, such as feeding, watering and caring for them, all of which, by the last paragraph of the first agreement, the plaintiff was to do to defendant's satisfaction without express qualification. If these were the only differences, possibly the contract in question could not be distinguished from that in the *Rawlins'* case. But there are more important differences. The *Rawlins'* contract was primarily a contract of employment, the employee to perform his work in a skillful and workmanlike manner and to the satisfaction of the employer and to be paid so much a month therefor. The present contract is primarily a lease, the rent to consist of payments at a certain rate for slaughtering, feeding, watering and caring for hogs, but with

an agreement that in case this work should not be done in all respects to the satisfaction of the defendant lessee, it might pay as rent à lump liquidated certain sum per annum in lieu of so much a hog. The last paragraph of the first contract expressly provides for the exercise of such an option by the defendant, and the second contract, made for a new consideration, confirms the view that the parties so understood the first contract. This second contract releases defendant altogether in case of dissatisfaction. If defendant was not to be sole judge of whether the work was properly done, it is difficult to see how it could exercise the option. If the option could be exercised only in case the work was in fact improperly done, that is, only in case in the opinion of a jury it was improperly done, the option would be rendered practically nugatory. But if it could be exercised in case in the opinion of the defendant the work was improperly done, it might be rendered effective. The defendant would then be required merely to act in good faith and to exercise its option only when satisfied that the work was not properly done. This would be a somewhat definite condition upon which, if it occurred, the option could be exercised. But if the option could be exercised only on condition that the work was not properly done in fact without providing how that was to be determined the condition would be so uncertain that the option would be of little avail. The parties apparently did not intend that. There is uncertainty enough as it is.

The other exceptions need not be considered. Those taken to such rulings and instructions of the trial judge as were based on the theory that the options mentioned were exercisable only in case the work was not done in a proper manner without reference to whether it was so done in the opinion of the defendant, are sustained.

One of the exceptions was taken to the overruling of a demurrer to the complaint. In the complaint there is a general allegation of performance which if standing alone might be sufficient under the circumstances of this case. But the plaintiff undertook in addition to this to aver performance specifically

and in doing so averred performance merely in a skillful and workmanlike manner. Taking the complaint as a whole it seems to us that there is uncertainty as to what is relied on as performance. The plaintiff should be allowed to amend the complaint in this respect so as to show performance, as required by the contract, to the satisfaction of the defendant. The other points set forth in the demurrer were properly overruled.

A new trial is ordered.

*G. A. Davis* for plaintiff.

*J. A. Magoon* and *R. D. Silliman* for defendant.

### DISSENTING OPINION OF JUDD, C.J.

While I agree with the majority of the Court that the jury should have been instructed to find whether the evidence showed that the plaintiff's undertakings in the contract between the parties were in fact executed by plaintiff to the satisfaction of the defendant, and not, as charged by the Court, that it was for the jury to determine whether the work was done by plaintiff in "a good and workmanlike manner," and that if it was so done the defendant was bound to be satisfied with it, I do not think a new trial should be ordered.

The plaintiff had the burden upon him and put on evidence to show that he did the work contracted for in a "good and workmanlike manner," as evidence to the jury that defendant was not in fact dissatisfied with plaintiff's performance of the contract, but that defendant's refusal to continue it, on the ground of dissatisfaction, was not bona fide; and on a new trial the same issue would go to the jury, to wit, whether plaintiff had performed his work properly as evidence as to whether the defendant was in fact satisfied with it. In my opinion the direction of the Court was harmless error.