H. HACKFELD & COMPANY, Limited *v.* J. E. GROSS-
MAN and M. E. GROSSMAN.

APPEAL FROM CIRCUIT JUDGE, FOURTH CIRCUIT.

SUBMITTED DECEMBER 7, 1901.          DECIDED JANUARY 2, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A mortgage with covenant on the part of the mortgagors to cultivate
the coffee now or hereafter growing on the mortgaged premises "to
the satisfaction" of the mortgagee and with further covenant that
upon a "breach in the performance or observance" of any one of
the covenants contained therein, the indebtedness thereby secured
should thereupon "become wholly due and payable," gives to the
mortgagee an option to declare a forfeiture whenever he may bona
fide become dissatisfied with the cultivation of the coffee.

The finding of the trial judge that the mortgagee was not dissatisfied
with the cultivation of the coffee is sustained and the decree dis-
missing the bill is affirmed.

OPINION OF THE COURT BY GALBRAITH, J.

The principal facts of this cause are as follows: On the 4th
day of May, 1897, the defendants were indebted to Paul Isen-
berg and J. F. Hackfeld, partners as H. Hackfeld & Company,
for advances made, in the sum of $1,750.00. In consideration of
this indebtedness and the agreement of Hackfeld & Co. to make
further advances, as needed, during the period of ten years next
ensuing from said date, in an amount not exceeding the sum of
$34,400.00, the defendants executed a mortgage on their coffee
estate of 200 acres located at Olaa, District of Puna, Island of
Hawaii. It was provided that the mortgage should be a continu-

ing security for all advances made during said ten years in any sum not to exceed $36,150.00. This mortgage was afterward assigned to the present owner, H. Hackfeld & Co., Limited. The mortgage contained *inter alia* the following covenant, i. e., "And the said mortgagors for themselves, their heirs and assigns hereby covenant and agree to and with the said mortgagees, their heirs and assigns that they will keep up the cultivation of coffee now or hereafter growing upon said land to the satisfaction of the said mortgagees, their heirs, executors, administrators or assigns," etc., and further provided that "if breach be made in the performance or observance of any of the covenants or agreements herein contained  *  *  *  then said indebtedness shall at once become wholly due and payable" etc. Advances were made under the mortgage from its date until March 1st, 1901, at which time the indebtedness secured by the mortgage amounted in the aggregate to $20,084.78.

On said March 1st, the assignee of the mortgagees refused to make any further advances under the mortgage and by resolution of its board of directors declared that it was not satisfied with the cultivation of coffee by the defendants and ratified the action of its president, Paul Isenberg, "in proceeding to foreclose said mortgage by reason of the breach of the covenant to keep up the cultivation of the coffee growing upon said land to the satisfaction of the mortgagee, and also for breach of the covenants contained in the agreement referred to in said mortgage relating to the keeping of proper books of account and to the purchase of supplies from H. Hackfeld & Co. and H. Hackfeld & Co., Limited."

On March 11th, 1901, the plaintiff filed its bill to foreclose the mortgage alleging a breach of the conditions above set out, i. e., failure to cultivate the coffee to its satisfaction, to keep proper books of account and purchase goods of the mortgagee, and praying that the mortgage be foreclosed and that the mortgaged premises be ordered sold to satisfy its said debt and the costs and charges of the proceedings. The defendants answered denying the breach of the covenants and alleged that the plain-

tiff was not bona fide and in good faith dissatisfied with their cultivation of the coffee but that its dissatisfaction was with the venture as a whole and with coffee culture as a profitable investment. At the trial the plaintiffs abandoned all of the alleged breaches of covenant except that in relation to the cultivation of coffee.

The trial judge found for the defendants and entered a decree dismissing the bill. The plaintiff appeals from that decree to this court.

The appellant contends that the law of the case is settled in this jurisdiction as announced by this Court in *Rawlins v. Soap Works*, 9 Haw. 262, and *Porter v. Hawaiian Pork Packing Company*, 11 Haw. 468; that under the law this covenant placed with the mortgagees, or their assigns, the option to declare a breach of the covenant whenever it became dissatisfied with the cultivation of coffee and that whenever this option was exercised, as was done by the resolution offered in evidence, the act was conclusive and inquiry into its reasons or purpose was foreclosed. That under the law there was no evidence that would sustain the finding of the judge in favor of the defendants.

This contention is sound in part, at least. The law was considered with care and learning in the two cases cited but its proper application to the facts of the case at bar is not free from difficulty. The Rawlins case was one of employment. The action was by the employee against the employer to recover damages under the contract. The contract stipulated that the work should be done in a "skillful and proper manner" and "to the satisfaction" of the employer. It was held that these two covenants were in the conjunctive and called for skillful and proper work and were not placed there "to gratify unreasonable taste, sensibility or preference"; that if the employee "did all things required of him by the contract in a skillful and proper manner" the employer was "bound to be satisfied." The court very properly said "There is nothing in the contract in question to make it terminable at will. The company cannot rescind it so far as

the clause in question is concerned unless actually dissatisfied with plaintiff's work."

The court said in the Porter case: "The present contract is primarily a lease, the rent to consist of payments at a certain rate for slaughtering, feeding, watering and caring for hogs, but with an agreement that in case this work should not be done in all respects to the satisfaction of the defendant, lessee, it might pay as rent a lump liquidated certain sum per annum in lieu of so much a hog." And in discussing the interpretation to be given contracts of this character the court said: "There is a third possible construction,—intermediate between the one that the performance is optional upon the part of the party who is to be satisfied and the one that performance is required on that one's part unless the other fails to do good work. Under this construction good work is required but the party who is to be satisfied is made sole judge as to whether the work is good. Whether the work is well done is not to be decided by the jury as the sole test of whether the party is satisfied. The question is not whether he ought to be satisfied but whether he is satisfied—not indeed whether he is satisfied with the contract or all of its terms, but whether he is satisfied that the work itself is done in a skillful and workmanlike manner as required by the contract. Evidence would be admissible to show whether the work was well done or not, for this would tend to show whether the party to be satisfied was in fact satisfied or not with the manner in which the work was done or whether he was merely dissatisfied with the contract as a whole or with some of its terms and wished to terminate it for some other reason than that he was satisfied that the work was not properly done. The question for the jury would be whether on all of the evidence the defendant was actually satisfied that the work was not properly done—the question whether in the opinion of the jury it was properly done being a subordinate question tending to throw light on the main question." (11 Haw. pp. 471 and 472.)

There is a material difference between the Rawlins and Porter cases and the case at bar. One of these was a contract for per-

sonal services, the other a contract of lease while this is a contract of mortgage. Those were both before a court of law while this is in a court of equity. The facts in those cases were submitted to a jury for determination while in this the facts and the law were determined by the judge. However much difference there may be in the character of the cases the court will be guided by the same principles in this case as controlled the court in reaching a conclusion in those.

When the terms of a contract are definite and unambiguous there is no room for interpretation. It is only when the language used by the parties leaves some doubt as to the meaning and intention that the courts will apply the rules of construction and interpretation in an effort to ascertain the intention of the parties to the contract. If it were plain what the parties intended by the covenant in the mortgage that the coffee was to be cultivated to the satisfaction of the mortgagees or their assigns the only duty of the court would be to enforce such intention if possible under the law.

As was pointed out in the opinion in the Porter case three rules of construction have been deduced from the various decisions on this kind of language according to the connection in which it is employed and the subject of the contract in which it has been used, i. e., (1) that the party to be satisfied must be satisfied if as a matter of fact he ought to be satisfied; (2) that the use of the words in a contract confer on the party to be satisfied an absolute option to terminate the contract at will; (3) that good work or service is required but that the party to be satisfied is the sole judge as to whether the work or service is good. In the application of this last rule the real question is one of fact, i. e., whether or not the party to be satisfied is in good faith dissatisfied with the work or service as claimed.

Some of the difficulties of this cause have been removed by the claim of the attorneys for the appellant that the case comes under the third rule of construction above set out and by the senior counsel of defendants practically conceding the correctness

of this claim.   This seems to have been the theory of defendants'
counsel who tried the case below.

In this view of the case the one leading question submitted to
the judge for determination was whether or not the appellant
was as a matter of fact in good faith dissatisfied with the defend-
ants' cultivation of the coffee.   The judge found that "the plain-
tiff was not dissatisfied with the cultivation of the coffee as
claimed in its bill"; "That its dissatisfaction was with the ven-
ture as a whole and coffee culture as a profitable investment."

The question presented for our determination is, does the
evidence sustain the finding of the trial judge.

It is contended by the appellant that admitting that its presi-
dent and directors may have been dissatisfied with the venture
with the defendants and with the coffee proposition in general
that such opinions were not the opinions of the corporation of
H. Hackfeld & Co., Limited; that the only way the corporation
could express an opinion was by resolution of its board of
directors; that the only expression from the corporation was that
contained in the resolution declaring its dissatisfaction with the
cultivation of the coffee, and that there was absolutely no evi-
dence to support the finding and decree appealed from.

This contention is not sound.   A corporation can only act by
and through its officers and agents.   It is a well settled rule of
law that the acts and admissions of the agent of a corporation
when acting within the scope of his authority are the acts and
admission of the corporation.   The rule is stated by "Thompson,
Commentaries on the Law of Corporations", Section 4,913, Vol.
4, as follows: "The declarations of an agent of a corporation
*as to matters in his charge, accompanying his acts as agent,*
stand on the same grounds with the acts themselves, and both go
to show what has been the conduct of the corporation in the mat-
ter to which they relate.   Such declarations of agents are often
called *verbal acts.*"

The Supreme Court of Connecticut says:   "The knowledge,
intention and purposes of a corporation can generally only be

known by the declarations and conduct of its directors and other principal officers while in the discharge of their duties. As a general rule what the directors know regarding matters affecting its interest—the corporation knows. Angell & Ames on Corporations, par. 306. The knowledge of the directors may often be inferred from circumstances." *Toll Bridge Co. v. Bestworth,* 30 Conn. 391.

Clearly under the law the acts of the plaintiff, the words, acts and conduct of its officers and agents disclosed by the evidence were properly considered by the judge in passing upon the existence of a *bona fide* dissatisfaction on the part of the plaintiff with the cultivation of coffee by the defendants.

It is in evidence that the president of plaintiff's corporation said to one of the defendants prior to the commencement of the suit that the coffee proposition was a failure; that he had no confidence at all in it and "I", apparently meaning the plaintiff, "have or was going to shut down and was going to stop all coffee investments and get right out of it"; that the plaintiff formerly had extensive interests in coffee plantations in the Olaa lands and had closed out or disposed of all except their interest with the defendants and that the plaintiff at no time offered any suggestions to the defendants that they change or improve their method of cultivation; that in June, 1900, the plaintiff's president said to one of the defendants "Dr. Grossman your place has had a better show than any place in the island"; that the resolution declaring the plaintiff's dissatisfaction with the cultivation of coffee also declared that there had been a breach of two other covenants, i. e., (1) a failure to keep proper books of account and (2) a failure to purchase goods of H. Hackfeld & Co. and of H. Hackfeld & Co., Limited. It further appears that there was a failure of proof on these last two alleged breaches of covenant and that they were abandoned at the trial below. The law placed on the plaintiff the burden of proof to establish by a preponderance of evidence that it was bona fide dissatisfied with the cultivation of coffee by the defendants. In this it failed. We find

that the evidence was ample to sustain the finding of the trial judge.

The decree appealed from is affirmed.

*Smith & Parsons* and *Kinney, Ballou & McClanahan* for plaintiff.

*Wise & Nickeus* and *Geo. A. Davis* and *Cecil Brown* for defendants.