MICHAEL A. TOWN and BONNIE C. TOWN, Appellants, *v.* LAND USE COMMISSION, STATE OF HAWAII; DANIEL FONG and HARUO FUJITOMO, Appellees.

NO. 5388

JUNE 19, 1974

RICHARDSON, C.J., KOBAYASHI and OGATA, JJ., and CIRCUIT JUDGE CHANG IN PLACE OF LEVINSON, J., RECUSED, and CIRCUIT JUDGE HEEN ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

Michael A. Town (hereinafter appellant), with his wife Bonnie, brings this appeal before this court after motion for summary judgment was granted to the Land Use Commission of the State of Hawaii (hereinafter appellee) and other named defendants, Daniel Fong and Haruo Fujitomo, by the circuit court of the second circuit in the State of Hawaii.

FACTS

On April 14, 1971, Ralph S. Yagi filed with the appellee a petition to amend the district designation for property located in the county of and on the island of Maui from its agricultural designation to a rural designation.

On April 15, 1971, the appellee informed Mr. Yagi by letter acknowledging the receipt of the petition, and stating, "After 45 but within 90 days following the public hearing the Land Use Commission is obliged to render a decision on your petition."

On July 16, 1971, the appellee held a public hearing on Maui to consider the Yagi petition. Appellant, an adjoining landowner, and other interested parties were present at this hearing and spoke in opposition to the Yagi petition.

A subsequent meeting was scheduled for October 8, 1971, on the island of Molokai to make a final decision on the Yagi petition. Appellant was present at the Molokai meeting; however, the decision on the petition was deferred at the request of Mr. Yagi.

Another meeting was scheduled for November 19, 1972, in Honolulu at which time the appellee scheduled a final decision on the Yagi petition. Appellant did not attend this meeting; however, he did write the appellee stating that it would be a violation of the Hawaii Administrative Procedure Act, HRS chapter 91, and a denial of due process if the petitioner were allowed to testify or give any further evidence on his petition. The decision on the petition was again deferred at the request of Mr. Yagi due to "some unforeseen circumstances".

A meeting was scheduled for January 7, 1972, in Hilo. Appellant was not present at this meeting; however, he did write to the appellee, renewing his objection to the taking of any testimony or further evidence from the petitioner. Mr. Yagi made an appearance at this meeting and requested permission to speak in behalf of his petition. After being informed that he would be allowed to speak provided that he did not attempt to introduce any new evidence, Mr. Yagi proceeded to rebut all statements made by the opposition to his petition and submitted documents for the consideration of the appellee, said documents including an unofficial survey of the three largest distributors of vegetables and fruits on the island of Maui, indicating that there was little or no demand for Kula grown fruits, and a pamphlet published by the Federal-State Market News Service.

The appellee's minutes of the January 7, 1972, meeting reveals that subsequent to the testimony given by Mr. Yagi, the following took place:

Since there was no further discussion, Vice-Chairman Tangen moved that this petition be approved on the following bases: matters of access and water can be worked out with the County; upon field investigation of the land under question, he was satisfied that this land is unsuitable for agricultural pursuits; and findings of the Maui County Planning Department regarding this request. He then elucidated that his motion for approval of the petition was "not based on anything that was said here today because these facts were made known to us before".

The motion to approve this petition was carried.

On March 21, 1972, appellant filed an appeal in the circuit court of the second circuit, State of Hawaii, Civil No. 1941, praying for reversal of the decision of the appellee on the Yagi petition. Both parties filed motions for summary judgment and the court granted the motion in favor of the appellee.

## ISSUES

I. Whether the time period prescribed by HRS § 205-4 and Land Use Commission's State Land Use District Regu-

lation 2.35 stating that the appellee "shall" render a decision not less than 45 days after, but within 90 days of the public hearing, is mandatory or directory.

II. Whether the Land Use Commission acted properly under the applicable provision of the Hawaii Administrative Procedure Act, HRS chapter 91, at the January 7, 1972, meeting.

## I. FORTY-FIVE TO NINETY DAYS TIME PERIOD

Appellant's primary contention is that under Land Use Commission's State Land Use District Regulation 2.35[1] and HRS § 205-4, prior to 1972 amendment,[2] the appellee was

---

[1] State Land Use District Regulation 2.35 reads as follows:
2.35 *Decision.*

Within a period of not more than 90 days and not less than 45 days after such hearing, the Commission shall act upon the petition for change. The Commission may approve the change with six affirmative votes.

[2] HRS § 205-4, prior to 1972 amendment, reads:

§205-4 Amendments to district boundaries. Any department or agency of the State or county, or any property owner or lessee may petition the land use commission for a change in the boundary of any district. Within five days of receipt, the commission shall forward a copy of the petition to the planning commission of the county wherein the land is located. Within forty-five days after receipt of the petition by the county, the county planning commission shall forward the petition, together with its comments and recommendations, to the commission. Upon written request by the county planning commission, the commission may grant an extension of not more than fifteen days for the receipt of any comments and recommendations. The commission may also initiate changes in a district boundary which shall be submitted to the appropriate county planning agency for comments and recommendations in the same manner as any other request for a boundary change.

After sixty days but within one hundred and twenty days of the original receipt of a petition, the commission shall advertise a public hearing to be held on the *appropriate island* in accordance with the requirements of section 205-3. The commission shall notify the persons and agencies that may have an interest in the subject matter of the time and place of the hearing. Within a period of not more than ninety days and not less than forty-five days after the hearing, the commission shall act upon the petition for change. The commission may approve the change with six affirmative votes. No change shall be approved unless the petitioner has submitted proof that the area is needed for a use other than that for which the district in which it is situated is classified, and either of the following requirements has been fulfilled:

    (1) The petitioner has submitted proof that the land is usable and adaptable for the use it is proposed to be classified, or

required as a matter of law to render a decision on the Yagi petition within the prescribed time period. Appellant contends that the sentence stating: "Within a period of not more than ninety days and not less than forty-five days after the hearing, the commission *shall* act upon the petition for change" (emphasis added), is a mandatory provision of the statute rather than directory and should the appellee fail to act within the prescribed period, any decision rendered thereafter is null and void.

In *Hawaii Corporation v. Kim*, 53 Haw. 659, 500 P.2d 1165 (1972), a case involving the failure of the appellant to give notice of its intention to bid on a state contract by the specified statutory deadline which was not to be later than six days prior to the opening of bids, we held:

> We are of the opinion that the time specified in HRS § 103-25, as implemented, is mandatory and not subject to waiver by the appellee. HRS § 103-25 clearly provides ". . . he *shall*, not less than six calendar days prior to the day designated for opening bids, give written notice . . . ." (Emphasis added.) The language of the statute is plain and unambiguous that the prospective bidder must meet the time specified in the statute in giving his written notice of his intention to bid to have his bid considered by the officer charged with letting the contract for the construction . . . . [53 Haw. at 666, 500 P.2d at 1169]

In *Territory v. Fasi*, 40 Haw. 478 (1954), this court stated at 484:

> The language is clear and explicit. The language "Within twenty days following any election, each candidate * * * *shall* file * * * an itemized statement of his * * * expenses * * * showing each amount expended, the purpose or object for which each expenditure was made, and the person or persons to whom made. Such statement shall be sworn to by each person making the

---

(2) Conditions and trends of development have so changed since the adoption of the present classification, that the proposed classification is reasonable. (Emphasis added.)

Note: The Sixth State Legislature, 1972, by Act 187 amended the above emphasized phrase to read "appropriate county".

expenditures and shall be open to public inspection'' is as mandatory as The Ten Commandments. (Emphasis added.)

*See also, Maui County v. do Rego,* 24 Haw. 608 (1919).

The language of appellee's Regulation 2.35 and HRS § 205-4 with regard to the time provision is plain and unambiguous with no implication of a contradiction in its intent. As stated in *Territory v. Fasi, supra,* at 483-84, citing *Nichols, Ltd. v. Vannatta,* 33 Haw. 602, 606 (1935), with approval:

"* * * neither official construction nor usage, no matter how long indulged in, can be successfully invoked to defeat the purpose and effect of a statute which is free from ambiguity, nor will the courts be influenced by the construction placed upon a statute by the officials whose duty it is to execute it where such construction is manifestly incorrect."

We are of the opinion that the time period requiring a decision to be rendered after 45 days and before 90 days has elapsed following the public hearing clearly is a mandatory requirement and not merely directory, subject to the waiver by the applicant.[3]

We are of the further opinion that the argument by counsel for appellee during oral argument contending that since appellant's only interest in the case was in preserving the status quo and that any delay on the decision by the commission was to his advantage and, therefore, the time limitation may be waived solely by the applicant, is without merit. An interested party to a proceeding for a change in boundary, especially where he is an adjoining property owner, has an inherent interest in the decision no matter what that decision may be and he is entitled to have that decision within the

---

[3] The letter of appellee to Yagi on April 15, 1971, stating "After 45 but within 90 days following the public hearing, the Land Use Commission is obliged to render a decision on your petition" is a good indication that the appellee recognizes this provision as mandatory.

It appears that at one point, the deputy attorney general handling the defense of appellee may have been willing to concede that the time requirement is mandatory when he stated in his Memorandum in Support of Motion for Summary Judgment at page 5, in Civil No. 1941, second circuit court, "Within a period of not more than ninety days and not less than forty-five days, the LUC *must* act upon the petition." (Emphasis added.)

specified period of time. The impact that the change in boundary will have, if approved, to the use and value of adjoining property are factors that must be considered. The interested party should not be placed in a state of limbo at the discretion of the applicant or the appellee, and the time limitations prescribed by HRS § 205-4 and LUC Regulation 2.35 insures the protection of both the applicant and the adjoining landowners at both extremes.

Furthermore, HRS § 205-4, prior to 1972 amendment, provides, *inter alia:* ". . . a public hearing to be held on the appropriate island in accordance with the requirements of Section 205-3 ", and the appropriate island in the instant case is the island of Maui. Neither § 205-3 nor § 205-4 provides for any ex parte appearances by the applicant before the appellee after the initial public hearing.

The facts of the instant case give a clear indication of the consequences which will result should the argument of counsel for the appellee prevail. The first meeting for rendering a final decision on the Yagi petition was scheduled on Molokai on October 8, 1971, 84 days after the public hearing and within the 45-90 days time prescribed by statute and appellee's own rules. After the appellant, in good faith and at his own expense, made an appearance at the Molokai hearing, the decision on the Yagi petition was postponed at the written request of petitioner Yagi.

The next meeting date was scheduled for November 11, 1971, 118 days after the public hearing and beyond the 45-90 days time limit. Upon being notified that a final decision would be rendered on the Yagi petition at the meeting in Honolulu, appellant again made a good faith effort to protect his interest by informing appellee by letter that he objected to the taking of any further testimony by the commission without an opportunity to be heard. Again, at the request of the petitioner, the decision was postponed.

The meeting at which the actual decision was made fell on January 7, 1972, in Hilo, island of Hawaii, 175 days after the public hearing and well beyond the 45-90 days time period. Appellant again wrote the appellee, reiterating his request that further testimony not be taken without his being present.

The appellant was placed in an impossible position, which worked only to the advantage of the petitioner. Petitioner was allowed to pick and choose the meeting at which he felt his petition would receive the most favorable treatment, or wait until such time as the other interested parties, either for financial reasons or for sheer lack of time, had given up on making an appearance at a meeting at which there was no guarantee that a decision would be reached.

The approval of the Yagi petition was rendered in violation of HRS §§ 205-3 and 205-4 as well as Land Use Regulation 2.35 and is therefore null and void.

## II. HAWAII ADMINISTRATIVE PROCEDURE ACT

Appellant has raised several procedural questions which give rise to the issue of whether appellee acted properly under the applicable provisions of the Hawaii Administrative Procedure Act (hereinafter HAPA), as enacted in HRS chapter 91, prior to any amendment in 1973. Specifically, appellant contends that the testimony given by petitioner Yagi and the statement made by Commissioner Tangen at the January 7, 1972, meeting in Hilo were in violation of the procedure which is required to be followed in a "contested case".

### APPLICABILITY OF HAPA

As stated in the 1961 Hawaii House Journal — Standing Committee Reports, Standing Committee Report No. 8, HAPA was adopted to "provide a uniform administrative procedure for all state and county boards, commissions, departments or offices which would encompass the procedure of rule making and the adjudication of contested cases." We find nothing in HRS chapter 205, the enabling statutes of the Land Use Commission (appellee), which would exempt the appellee from the procedures set by HAPA. Thus, as a State agency, appellee must conform to the requirements of HAPA when acting in either a rule making capacity (quasi-legislative), or in the adjudication of a contested case (quasi-judicial).

RULE MAKING

The appellee contends that the procedure for the adoption of and amendment to district boundaries is strictly a rule making process and that therefore the actions of the appellee at the January 7, 1972, meeting were within the authority of the appellee in its rule making capacity and therefore no error was committed.

HRS § 91-1(4) defines "rule" as follows:

(4) "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intraagency memoranda.

We are of the opinion that the adoption of district boundaries classifying lands into conservation, agricultural, rural or urban districts, or the amendment to said district boundaries is not a rule making process within the meaning of the above cited definition. *See Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 522 P.2d 1255 (1974). HRS § 205-3[4] and §205-4 (see

---

[4] HRS § 205-3 reads:

§205-3 Adoption of district boundaries. The land use commission shall prepare district classification maps not later than January 1, 1964 showing all the proposed boundaries of conservation, agricultural, rural, and urban districts. At least one public hearing shall be held in each county prior to the final adoption of the district boundaries for that county. Notice of the time and place of the hearing shall be published in the same manner as notices required for public hearings by the planning commission of the appropriate county. If there is no planning commission, then the notice shall be published at least twenty days prior to the hearing in a newspaper of general circulation within the county. The notice shall indicate the time and place that the maps showing the proposed district boundaries within the county may be inspected prior to the hearing.

At the hearing, interested owners, lessees, officials, agencies, and individuals may appear and be heard. They shall further be allowed at least fifteen days following the final public hearing held in the county to file with the commission a written protest or other comments or recommendations. The district boundaries within a county shall be adopted in final form within a period of not more than ninety days and not less than forty-five days from the time of the last

footnote 2) empower the appellee to effectuate the setting of boundaries under the scheme provided by HRS § 205-2.[5] It

hearing in the county; provided that district boundaries for all counties shall be adopted in final form no sooner than May 1, 1964, nor later than July 1, 1964. The county concerned shall be furnished with copies of any written protest, comment, or recommendation. The commission shall prepare and furnish each county with copies of classification maps for the county showing the district boundaries adopted in final form.

[5] HRS § 205-2 reads:

§205-2 Districting and classification of lands. There shall be four major land use districts in which all lands in the State shall be placed: urban, rural, agricultural, and conservation. The land use commission shall group contiguous land areas suitable for inclusion in one of these four major districts. The commission shall set standards for determining the boundaries of each district, provided that:

(1) In the establishment of boundaries of urban districts those lands that are now in urban use and a sufficient reserve area for foreseeable urban growth shall be included;

(2) In the establishment of boundaries for rural districts, areas of land composed primarily of small farms mixed with very low density residential lots, which may be shown by a minimum density of not more than one house per one-half acre and a minimum lot size of not less than one-half acre shall be included;

(3) In the establishment of the boundaries of agricultural districts the greatest possible protection shall be given to those lands with a high capacity for intensive cultivation; and

(4) In the establishment of the boundaries of conservation districts, the "forest and water reserve zones" provided in section 183-41 are renamed "conservation districts" and, effective as of July 11, 1961, the boundaries of the forest and water reserve zones theretofore established pursuant to section 183-41, shall constitute the boundaries of the conservation districts; provided that thereafter the power to determine the boundaries of the conservation districts shall be in the commission.

In establishing the boundaries of the districts in each county, the commission shall give consideration to the master plan or general plan of the county.

Urban districts shall include activities or uses as provided by ordinances or regulations of the county within which the urban district is situated.

Rural districts shall include activities or uses as characterized by low density residential lots of not more than one dwelling house per one-half acre in areas where "city-like" concentration of people, structures, streets, and urban level of services are absent, and where small farms are intermixed with the low density residential lots. These districts may include contiguous areas which are not suited to low density residential lots or small farms by reason of topography, soils, and other related characteristics.

Agricultural districts shall include activities or uses as characterized by the cultivation of crops, orchards, forage, and forestry; farming activities or uses related to animal husbandry, and game and fish propagation; services and uses accessory to the above activities including but not limited to living quarters or dwellings, mills, storage facilities, processing facilities, and roadside stands for the sale of products grown on the premises; and open area recreational facilities.

logically follows that the process for boundary amendment is not rule making or quasi-legislative, but is adjudicative of legal rights of property interests in that it calls for the interpretation of facts applied to rules that have already been promulgated by the legislature.

CONTESTED CASE

Appellant, on the other hand, argues that this is a "contested case", and that all of the provisions of HAPA with regard to contested cases are applicable.

HRS § 91-1(5) defines "contested case" as:

proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing.

We are of the opinion that the instant case is a "contested case" within the definition cited above. The appellant has a property interest in the amending of a district boundary when his property adjoins the property that is being redistricted. *East Diamond Head Association v. Zoning Board,* 52 Haw. 518, 479 P.2d 796 (1971); *Dalton v. City and County of Honolulu,* 51 Haw. 400, 462 P.2d 199 (1969). Therefore, any action taken on the petition for boundary change is a proceeding in which appellant has legal rights as a specific and interested party and is entitled by law to have a determination on those rights.[6]

Turning now to the specifications of error made by the appellant, HRS § 91-9(c) states:

These districts may include areas which are not used for, or which are not suited to, agricultural and ancillary activities by reason of topography, soils, and other related characteristics.

Conservation districts shall include areas necessary for protecting watersheds and water sources; preserving scenic and historic areas; providing park lands, wilderness, and beach; conserving endemic plants, fish, and wildlife; preventing floods and soil erosion; forestry; open space areas whose existing openness, natural condition, or present state of use, if retained, would enhance the present or potential value of abutting or surrounding communities, or would maintain or enhance the conservation of natural or scenic resources; areas of value for recreational purposes; and other related activities; and other permitted uses not detrimental to a multiple use conservation concept.

[6] *See* East Diamond Head Assn v. Zoning Board, *supra,* and Dalton v. City and County of Honolulu, *supra.*

§ 91-9 Contested cases; notice; hearing; records. . . .

. . . .

(c) Opportunities shall be afforded all parties to present evidence and argument on all issues involved.

HRS § 91-10(3) states:

§ 91-10 Rules of evidence; official notice. . . .

. . . .

(3) Every party shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence.

Under the facts of the instant case, the testimony of petitioner Yagi received by appellee at the January 7, 1972 meeting was in violation of the sections cited above and further violative of the provisions of HRS §§ 205-3 and 205-4. Appellant was not given the opportunity to present argument or rebuttal evidence of his own to counter the ex parte arguments presented by petitioner Yagi. Nor was he given the opportunity to cross-examine petitioner Yagi. Thus, prejudicial error was committed.

Similarly, appellee's receipt of Commissioner Tangen's field investigation "view" without a prior proper notice to appellant violates the provisions of HAPA in a contested case.

HRS § 91-10(4) states:

§ 91-10 Rules of evidence; official notice. In contested cases:

. . . .

(4) Agencies may take notice of judicially recognizable facts. In addition, they may take notice of generally recognized technical or scientific facts within their specialized knowledge; but *parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise,* of the material so noticed, and they shall be afforded an opportunity to contest the facts so noticed. (Emphasis added.)

The statement conflicts with the requirements as prescribed in the cited section above. The "view" qualifies as technical facts within the specialized knowledge of Commissioner

Tangen and amounts to what could be characterized as uncontroverted testimony in favor of appellant. The record reveals that appellant was not given any notice that a "view" was even contemplated, and was never afforded an opportunity to contest the facts so noticed.

Reversed.

*Michael A. Town,* attorney pro se, for appellants.

*E. John McConnell, Jr.,* deputy attorney general *(George Pai,* attorney general, of counsel; *Benjamin M. Matsubara,* deputy attorney general, on the brief), for appellee Land Use Commission, State of Hawaii.

*Walter T. Shimoda* for appellees Daniel Fong and Haruo Fujitomo.

DISSENTING OPINION OF OGATA, J.,
WITH WHOM RICHARDSON, C.J., JOINS

I do not reach the conclusions of the majority in this case, and, therefore, I must dissent. The majority holds that the time period prescribed by HRS § 205-4 and Land Use Commission's State Land Use District Regulation 2.35 stating that within a period of not more than 90 days and not less than 45 days after the public hearing, the Land Use Commission (hereinafter appellee, L.U.C.) shall act upon the petition for a change, is mandatory, and also holding that the proceedings of the appellee, L.U.C., concerning its adoption of district boundaries under HRS § 205-3, and its determination of a petition for amendment to district boundaries under HRS § 205-4, are classifiable as contested cases under the Hawaii Administrative Procedure Act (hereinafter HAPA).

I.

While the matter of zoning of land was prior to 1961 usually considered to be local in nature and the legislature authorized the counties to deal with this problem, in the regular session of 1961, the legislature enacted Act 187, "A Bill for an Act Relating to the Zoning Powers of the State and the Assessment of Real Property Based Upon Zones Estab-

lished by the State and Making an Appropriation Therefor.'' Substantially the entire act was re-enacted by the legislature in the 1963 regular session under Act 205, to clarify some of the provisions of Act 187, including those with respect to hardship caused to landowners who wished to develop lands which were included in agricultural districts but where such lands were not at all suitable for agricultural uses. Act 205, S.L.H. 1963, § 1.

Again in 1965, the legislature amended the provisions of the then section 98H-4, R.L.H. 1955 (1965 Supp.), relating to amendments to district boundaries. Act 32, S.L.H. 1965. Section 98H-4, R.L.H. 1955 (1965 Supp.), is now HRS § 205-4. In Section 1 of Act 32, S.L.H. 1965, the legislature stated:

> The purpose of this Act is to reduce the number of days in which petitions for boundary changes may be processed. Experience has shown that the number of days required to process the petition under the present Act has caused undue hardship on some landowners.

The time limitation requiring the appellee, L.U.C., to decide upon a petition for a change in boundary within a period of not more than 90 days and not less than 45 days was intended to give to the appellee, L.U.C., an adequate period to deliberate upon a petition requesting the change in the district boundary and also to protect the landowners or lessees from too long delays by appellee, L.U.C., in reaching a decision. It is to be noted that the original act did not contain any limitation whatsoever, as to when the appellee, L.U.C., was to act upon such a petition, other than that it could not act within less than 45 days after such public hearing. Act 187, S.L.H. 1961, § 6. The 1963 amendments at least required the appellee, L.U.C., to act on such petition for a change in boundary within a period of 300 days from the receipt of the petition by the appellee, L.U.C. Act 205, S.L.H. 1963, § 2. The 45 day waiting period, during which the appellee, L.U.C., is required to withhold action under HRS § 205-4 has never been modified by the legislature since original enactment. But to protect landowners, and lessees, the legislature has seen fit to impose a time limitation so that appellee,

L.U.C., will act on these petitions for change. In fact in 1965, the legislature further amended the predecessor to HRS § 205-4, so that appellee, L.U.C., will act upon petitions for amendment to district boundaries within a period of 210 days, or 7 months, after such petitions have been received by appellee, L.U.C., and HRS § 205-4, now so provides.

To interpret the time period prescribed in HRS § 205-4, as well as the time period set forth in HRS § 205-3, as mandatory would seem to be directly contrary to the legislative intention as reflected in the history of the land use law. The majority in so construing this requirement seems to rely entirely on the form of the language "shall" used in these sections, rather than on substance. We said in *County of Maui v. do Rego*, 24 Haw. 608, 615 (1919) that:

> A mandatory provision in a statute is one, the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding. Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other.

Just because the word "shall" appears in a statute does not automatically render the same to be mandatory. Such a mechanical construction will ignore the principle mentioned in *County of Maui v. do Rego, supra*. To thus construe this statute as mandatory, rather than directory, would render the petition for amendment of boundary filed with appellee, L.U.C., by Mr. Yagi null and void after 90 days from the public hearing. There is nothing expressly stated in HRS § 205-4, that such would be the consequence of a petition for amendment after 90th day from the public hearing, or that the appellee, L.U.C., after such last day would not be able to act on the petition. The failure on the part of appellee, L.U.C., to act on the petition within the period of 45 days as provided in HRS § 205-4, would not injuriously affect any one, and in this case no one has been adversely affected because appellee,

L.U.C., acted on the petition after 90 days from the date of hearing, other than Mr. Yagi and appellees, Mr. Fong and Mr. Fujitomo, who requested the appellee, L.U.C., for the delay.

Many judicial authorities hold that statutory provisions concerning the precise time when a thing has to be done are not regarded as of the essence, but are regarded as directory, and this viewpoint is especially pertinent where a statute fixes a time simply for convenience or orderly procedure, and this rule applies to statutes which direct the doing of a thing within a certain time without any negative words restraining the doing of it afterward. *Winslow v. Zoning Board of City of Stamford*, 143 Conn. 381, 122 A.2d 789 (1956); *Brenner v. Bruckman*, 3 N.Y.S.2d 265 (1938); Vol. 1A *Sands Sutherland on Statutory Construction*, § 25:03, at p. 300 (1972); 73 Am. Jur. 2d, *Statutes*, § 18.

I do not believe that the principle announced in *Hawaii Corporation v. Kim*, 53 Haw. 659, 500 P.2d 1165 (1972), should control the interpretation of HRS § 205-4, since in *Hawaii Corporation v. Kim, supra*, we were then concerned with the statute on the expenditure of public funds. There we properly held that HRS § 103-25 in plain and unambiguous language requires a prospective bidder as a condition precedent to submit a bid, must first give written notice of his intention to bid to the officer charged with letting a public contract, at least six days before the date designated for the opening of bids, and that the time requirement was mandatory. *Territory v. Fasi*, 40 Haw. 478 (1954), is also irrelevant here since the time element was essential to the imposition of a criminal penalty.

The majority does not expressly indicate the consequences of its holding, but from the oral arguments on this case, it would seem that the only remedy available to the appellees, landowners, would be to file another petition with appellee, L.U.C., or they would be without any remedy. Such a nonsensical procedural requirement would not solve anything, since the appellee, L.U.C., may, and it can still, engage in the same kind of delay by withholding final decision on the second petition until it, too, becomes null and void, and this process can go on indefinitely. I would therefore hold that

554

the time limitation set forth in HRS §§ 205-3 and 205-4 is directory, and not mandatory. If for any reason, the appellee, L.U.C., fails or neglects to act on any matter concerning the adoption of district boundaries, or the amendment in the boundary of any district, within the 90 day limit provided in these sections, then such non action would give rise to an appropriate legal remedy to any person who may be aggrieved.

The majority makes much of the request by Mr. Yagi to appellee, L.U.C., that it defer action on the Yagi petition at its meeting held on Molokai on October 8, 1971, six days before the expiration of the 90 day limitation prescribed in HRS § 205-4. The records of appellee, L.U.C., show that although Mr. Yagi did in fact make such a request to appellee, L.U.C., that such a request resulted only after a telephone call had been made to Mr. Yagi by the executive secretary of appellee, L.U.C., explaining to him that there would be only six members of the appellee, L.U.C., attending the Molokai meeting, and that Mr. Tanji Yamamura, a member of appellee, L.U.C., attending that meeting would be disqualified to participate on Mr. Yagi's petition. Under such a circumstance, appellee, L.U.C., would be unable to act on the petition for amendment in the boundary as requested by Mr. Yagi, on Molokai on October 8, 1971, since under HRS § 205-4, six affirmative votes are required to favorably act on such a petition. The minutes of the meeting of appellee, L.U.C., confirm that only six members of the commission were present at the Molokai meeting on October 8, 1971, and that one of such members, Mr. Tanji Yamamura, was disqualified to act on Mr. Yagi's petition. Having received this message from the executive secretary of appellee, L.U.C., Mr. Yagi's only choice was to ask the appellee, L.U.C., for an extension of time prior to the expiration of 90th day, in order to give the appellee, L.U.C., more time because of the lack of requisite members. There was, of course, another postponement by appellee, L.U.C., in rendering a decision on this petition at its meeting in Honolulu on November 11, 1971, at the request of Mr. Yagi, but this second postponement occurred only after the 90th day time limitation had already expired

as a result of the first postponement. A decision by appellee, L.U.C., could have been rendered on Molokai on October 8, 1971, well within 90 days from the public hearing, but for the lack of membership on the commission.

II.

The majority opinion also holds "that the adoption of district boundaries classifying lands into conservation, agricultural, rural or urban districts, or the amendment to said district boundaries is not a rule making process," and that this case, therefore, must be a "contested case."

What we have here is not a contested case but an agency of the state exercising its rule-making power.

HRS § 91-1(1) defines the word "agency" as follows:

"Agency" means each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches.

HRS § 91-1(4) defines the word "rule" in the following language:

"Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

By virtue of the foregoing definitions it would seem to me that any statement by any agency of general or particular applicability and future effect that implements, interprets, or prescribes any law or policy would constitute and be considered to be a rule. *Aguiar v. Hawaii Housing Authority*, 55 Haw. 478, 522 P.2d 1255 (1974); 1 *Davis, Administrative Law Treatise*, §§ 5.01 and 5.02. Although in the case of a petition for amendment in the boundary of a district, the area of land

concerned may be small and the people involved in the proceeding may not be numerous, the procedure utilized by appellee, L.U.C., is the same as for the adoption of the boundaries of districts within all of the counties of the state, in which numerous parcels and landowners and lessees and other interested persons are affected.

The appellee, L.U.C., has taken the view that it was in this case engaged in rule making and followed the requirements of HRS § 205-4, and the procedure set forth in HAPA applicable to rule making, and appellants, in their Opening Brief, agree and do not dispute this concept that the appellee, L.U.C., was involved in such activity. It was only in the Reply Brief that appellants asserted that this was a ·"contested case," but then appellants' apparent theory seems to be that while a petition for change in the boundary of a district before appellee, L.U.C., under HRS § 205-4, invokes the rule-making process of the appellee, L.U.C., if thereafter, an adjoining property owner participates in the public hearing, then the rule-making procedure is suddenly converted into one similar to a "contested case." Such a theory is untenable and without merit.

A decision by an agency as to the choice of the procedural mechanism to be employed by it under HAPA in achieving a result should be respected by the courts, when a particular method to be employed by the agency is not clearly spelled out in the statute. 1 *Cooper, State Administrative Law* (1965) at 180.

The same authority also makes the following observation as to zoning cases:

> Many activities of zoning commissions are predominantly rule-making in character, and subject to the narrow scope of review available in rule-making cases. However, in contested cases arising under zoning ordinances — typically, cases involving the question whether a particular use should be permitted under the applicable zoning regulation — the scope of review is on the whole broad. 2 *Cooper, State Administrative Law* (1965) at 721.

The appellee, L.U.C., is an agency of the state and its activities and functions are similar to a zoning commission.

The majority makes reference to *East Diamond Head Association v. Zoning Board,* 52 Haw. 518, 479 P.2d 796 (1971), which was, indeed, a contested case under the comprehensive zoning code in which appellants sought to determine the propriety of a zoning variance issued by the Zoning Board of Appeals of the City and County of Honolulu. We simply held in that case that appellants, being adjoining owners or residents of the land subject to a zoning variance, were persons aggrieved under HRS § 91-14(a). *East Diamond Head Association v. Zoning Board, supra,* is as stated above by 2 *Cooper, State Administrative Law* (1965) at 721, a typical contested case involving the question as to whether a variance should be granted under the comprehensive zoning code. *Dalton v. City and County of Honolulu,* 51 Haw. 400, 462 P.2d 199 (1969), was not an appeal under HRS § 91-14, in a contested case, but it was a case for a declaratory judgment and for an injunction, and is, therefore, inapposite to support the legal principle that the instant case is a "contested case."

Since this case is not a "contested case," but rather one in which the rule-making power was exercised, none of the statutory procedural requirements set forth in HAPA, applicable only to a "contested case" need to be observed by appellee, L.U.C. But even treating the proceedings before the appellee, L.U.C., as a contested case, I do not think that the procedural errors alleged by appellants were so serious as to require a reversal. The statements made by Mr. Yagi before the appellee, L.U.C., at its Hilo meeting and in the absence of appellants, and also the fact that one of the members of appellee, L.U.C., had made a field trip to the property involved in this case are at most harmless errors, and no substantial rights of appellants have been prejudiced. If the appellants actually believed that they were deprived of due process because they were not given any opportunity to rebut the testimony of Mr. Yagi which was offered to appellee, L.U.C., at its Hilo meeting but which the appellee, L.U.C., refused to consider as to any new evidence presented by Mr. Yagi at that meeting, and if the appellants wanted to present to appellee, L.U.C., any more testimony concerning the physical features of the land subject to these

proceedings, they could have applied to the court below, for leave to present such evidence material to the issues and the court could have granted to appellants such a relief. In such event, the appellee, L.U.C., would be given the opportunity to render a new decision based upon all of the evidence, including such evidence as may be elicited at the supplemental hearing as ordered by the court. HRS § 91-14(e). No such request was made by appellants in this case.

In view of the foregoing, I would affirm.