AIRGO, INC., Plaintiff-Appellant, Cross-Appellee, *v.* HORIZON CARGO TRANSPORT, INC., and A. D. SHIPLEY, Defendants-Appellees, Cross-Appellants

NO. 8208

(CIVIL NO. 55247)

OCTOBER 11, 1983

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

*Per Curiam.* This is an appeal and cross-appeal in a contract case. Plaintiff-appellant/cross-appellee Airgo, Inc. (Airgo) sued defendants-appellees/cross-appellants Horizon Cargo Transport, Inc. (Horizon Cargo) and A. D. Shipley

(Shipley) for breach of contract and Horizon Cargo counter-claimed. We affirm in part and reverse and remand in part.

Horizon Cargo conducted an interisland air freight service in Hawaii. Shipley is the president and general manager of Horizon Cargo. Horizon Cargo was created in August 1977 as the operating arm of Horizon Air Services, Ltd. (Horizon Air), a bankrupt corporation which had filed for reorganization under Chapter XI of the Bankruptcy Act. Horizon Cargo was formed to carry on the business of Horizon Air pursuant to a plan to repay creditors. Airgo is a Texas freight transport company. In February 1978, Horizon Cargo and Airgo entered into a sixty-day service agreement whereby Airgo agreed to provide, operate and maintain a DC-3 cargo plane for Horizon Cargo's use in its freight operations in Hawaii. In return, Horizon Cargo was to pay Airgo for services rendered. Shipley personally guaranteed certain obligations owed by Horizon Cargo to Airgo under this contract.

After this first service agreement was signed, Horizon Cargo contracted with a Japanese tour company called King Skyliner to conduct passenger flights on sightseeing tours of the islands. On March 31, 1978, a second service agreement was signed by Horizon Cargo and Airgo to accommodate the expansion of Horizon Cargo's business into the area of pas-senger flights. This contract provided for a six-month relation-ship which involved the use of a DC-3 passenger aircraft in addition to the DC-3 cargo aircraft. This second agreement was also guaranteed by Shipley. Both this agreement and the February agreement provided for interpretation of the con-tract in accordance with the laws of the State of Texas.

On July 14, 1978, Airgo terminated the contract alleging that Horizon Cargo had failed to pay for services rendered in accordance with the contract. Airgo filed a complaint in the First Circuit Court against Horizon Cargo and Shipley on July 26, 1978 for money owed under the March 31st agreement. Horizon Cargo alone counterclaimed alleging breach of con-tract and interference with contractual relations. On July 28, 1978, Horizon Cargo obtained a federal court injunction[1]

---

[1] Jurisdiction in the federal court was based upon Horizon Cargo's connection with

ordering Airgo to continue its operation under the service agreement and ordering Horizon Cargo to make payments to Airgo. Airgo performed under the contract until September 8, 1978, when the federal court order was lifted.

The jury, by special verdict, found Horizon Cargo and Shipley liable to Airgo for $67,438.54. On the counterclaim, the jury did not find any interference with the contract, but did award Horizon Cargo $32,500 for breach of contract. The trial court further awarded attorneys' fees and prejudgment interest to both parties.

This case is a complex one with numerous issues raised on appeal. We turn first to the appeal of plaintiff-appellant Airgo, Inc.

I.

Airgo's first contention is that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict on the counterclaim. Airgo contends that there was insufficient evidence as a matter of law to support a finding of breach of contract on the counterclaim. More specifically, Airgo claims that Horizon Cargo's evidence was insufficient to furnish a basis for measuring its damages.

Upon a review of the record, we find that there was substantial testimony at trial concerning Airgo's failure properly to operate and maintain the aircraft pursuant to the service agreement. There was also testimony concerning loss of business revenue (including the loss of a Horizon Cargo contract) that resulted from the failure to properly operate and maintain the aircraft. Katsuyaki Kobayashi, for example, the general manager of King Skyliner, testified that the tours which were the subject of the Horizon Cargo/King Skyliner contract were often delayed or cancelled because of problems with the passenger plane. Kobayashi stated that because of these problems, King Skyliner stopped making payments under the contract to

---

its predecessor company, Horizon Air.

Horizon Cargo in July. The contract provided for a three-year relationship and was worth a guaranteed $32,500 a month.

The jury could have concluded on the evidence that the appellants' breaches with regard to operation and maintenance of the aircraft caused the loss of the King Skyliner contract. The damage award thus was not based on mere speculation, conjecture or surmise since the revenue loss for one month from that contract and the amount of the verdict were the same. There was thus sufficient evidence from which the jury could have, with reasonable certainty, reached its verdict on the counterclaim. *Compare, Uyemura v. Wick,* 57 Haw. 102, 551 P.2d 171 (1976); *Ferreira v. Honolulu Star-Bulletin,* 44 Haw. 567, 356 P.2d 651 (1960); *Ailetcher v. Beneficial Finance Co.,* 2 Haw. App. 301, 632 P.2d 1071 (1981). The law of Texas is no different. *Supply and Equipment Co., Inc. v. Phillips,* 490 S.W.2d 913 (Tex. Civ. App. 1972); *Ezon v. Faulkner Construction Co.,* 422 S.W.2d 568 (Tex. Civ. App. 1967); *Atomic Fuel Extraction Corp. v. Slick's Estate,* 386 S.W.2d 180 (Tex. Civ. App. 1964); *Jordan v. Cartwright,* 347 S.W.2d 799 (Tex. Civ. App. 1961).

Airgo also claims that its motions for directed verdict and for judgment notwithstanding the verdict should have been granted because the counterclaim for breach of contract was barred by Horizon Cargo's prior election of an equitable remedy. Airgo's contention is that because Horizon Cargo obtained injunctive relief to compel the performance of the contract, it is now precluded from asserting an action for damages for breach of the same contract.

We find that the doctrine of election of remedies is no bar in the circumstances of this case. To begin with, as has been said: "The doctrine is not a rule of substantive law but rather is a technical rule of procedure or judicial administration." 25 AM. JUR.2d, *Election of Remedies* § 1 at 647 (1966). Hawaii procedural law therefore governs this point. Under our liberalized rules of pleading and procedure a party may state "as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both." Rule 8(e)(2), HRCP. Rule 18(a), HRCP, provides that a party may join "as many claims, legal or equitable, as he has

against an opposing party." These rules allow liberal joinder even of inconsistent claims. The injunction to compel performance of the contract clearly did not bar a claim for damages because of breaches of it.

## II.

Airgo contends that Instruction No. 5 was erroneously given to the jury. Instruction No. 5 provided:

In connection with the contracts entered into between the Plaintiff and the Defendants, whether the parties to the contracts gave them a particular construction is to be regarded by you in giving effect to the provisions of the contracts. The subsequent acts of the parties, showing the construction that they themselves have put upon the agreement, are to be considered by you for the purpose of assisting you in arriving at a determination of what the arrangement was between the parties.

Airgo claims that the service agreements were unambiguous on their face and that therefore any interpretation of the contracts must be based upon the language in the contracts, without resort to extrinsic evidence. A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning. *Hennigan v. Chargers Football Co.,* 431 F.2d 308, 314 (5th Cir. 1970). *See also, DiTullio v. Hawaiian Ins. & Guaranty Co.,* 1 Haw. App. 149, 616 P.2d 221 (1980); *Hackfield and Co. v. Grossman,* 13 Haw. 725 (1902).

In the instant case, the February and March 31st agreements were the controlling contracts. We find that a number of the provisions in these contracts are susceptible to more than one meaning. For example, one of the primary disputes in this case involved the question of who would be responsible for the costs incurred in the maintenance of the aircraft. Much of the dispute centered around the issue of what airplane parts and equipment were properly includable as costs. In this regard, the March 31st agreement provided in paragraph 3: "Horizon shall pay for all cost of operation of the Aircraft and support thereof . . ." and in paragraph 5: "Airgo shall be solely responsible for maintenance of the aircraft." "Cost" is not defined anywhere in the agreement and it is not clear from the language of the

contract alone what "solely responsible for the maintenance" includes.

Furthermore, we cannot understand why Airgo is now complaining that the giving of Instruction No. 5 was error when Airgo availed itself of every opportunity in the presentation of its case to introduce extrinsic evidence concerning the interpretation given the contract by the parties.

### III.

The trial court awarded Horizon Cargo and Airgo attorneys' fees and prejudgment interest pursuant to Hawaii law. Airgo claims that the trial court erred in ruling that claims for attorneys' fees and prejudgment interest are governed by Hawaii law. The parties expressly agreed in both service agreements that any disputes were to be resolved under Texas law. One of the prime objectives of contract law is to protect the justified expectations of the parties. When the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied. RESTATEMENT (SECOND), *Conflict of Laws* § 187(1) (1971). We conclude that in accordance with the parties' expectations, the substantive law of Texas should have been applied in the present case. Accordingly, we reverse on this point.

### IV.

In its cross-appeal, Horizon Cargo raises two points. It contends that (1) Shipley's personal guarantee does not extend beyond the termination of the service agreement on July 14, 1978, and (2) it was reversible error for Airgo's attorney to make prejudicial statements before the jury regarding attorneys' fees and the amounts of exclusions and reductions from Airgo's claim for damages.

We note at the outset that Horizon Cargo has substantially failed to comply with Supreme Court Rule 3(b)(5) in regards to its first point on appeal. Rule 3(b)(5) requires that the appellant set forth the points on appeal with a reference to the record

which sets forth the manner in which each alleged error was raised at the trial below. Noncompliance forces this Court to speculate on the what and the why of the appeal and in the appropriate case can result in a dismissal of the entire appeal. *Wright v. Chatman,* 2 Haw. App. 74, 76, 625 P.2d 1060, 1062 (1981).

## A.

At the close of Airgo's case, Horizon Cargo made a motion to extinguish Shipley's liability as guarantor of the service agreements on the basis that the July 14 termination by Airgo constituted a material alteration of the guarantee. Horizon Cargo later withdrew this motion. It thereafter made no further motions or objections in regards to Shipley's liability as guarantor of the contracts. Moreover, Horizon Cargo also failed to object to Instruction No. 20, which provided:

> You are instructed that defendant A.D. Shipley is liable to plaintiff for the total amount of money that you find that plaintiff is entitled to recover against defendant Horizon Cargo Transport, Inc.

The question on the special verdict form establishing concurrent liability on the part of Horizon Cargo and Shipley was also not objected to. The first question on the special verdict form provided:

> Is the Plaintiff, AIRGO, INC., entitled to recover any sums of moneys from Defendants HORIZON CARGO TRANSPORT, INC. and A.D. SHIPLEY, pursuant to any and all contracts for the period from February, 1978 through September 8, 1978?

Since it did not object at trial to the submission of this issue to the jury, Horizon Cargo is precluded from raising this issue on appeal. *Compare, MPM Hawaiian, Inc. v. Amigos, Inc.,* 63 Haw. 485, 487, 630 P.2d 1075, 1077 (1981).

## B.

Horizon Cargo contends that it was error for Airgo's attorney to make prejudicial statements before the jury regarding

attorneys' fees. Horizon Cargo points to two instances in the record where these alleged errors occurred. In neither of these instances did Horizon Cargo object, and one of these cited errors occurred during a bench conference where the jury was not present. Furthermore, the trial court would not permit any discussion regarding attorneys' fees before the jury. Airgo's counsel was effectively cut off by the trial court at any mention of attorney's fees and we cannot see how any prejudice resulted therefrom.

We find no merit to Horizon Cargo's contention that references by Airgo's attorney to exclusions and reductions from Airgo's claim for damages were prejudicial to Horizon Cargo.

We affirm in part and reverse and remand for a determination of attorney's fees and prejudgment interest in accordance with Texas law.

*Paul E. Di Bianco* on the briefs for Horizon Cargo Transport, Inc. and A.D. Shipley.

*Felix A. Maciszewski* on the briefs for Airgo, Inc.