874 P.2d 1084

MAUNA KEA POWER COMPANY,
INC., Appellant–Appellant,

v.

BOARD OF LAND AND NATURAL RE-
SOURCES (BOARD), William W. Paty
as Chairman of both the Board and the
Commission on Water Resource Man-
agement, Herbert Apaka, Jr., Herbert
Arata, John Arisumi, Moses Kealoha,
and Attorney General Warren Price, act-
ing in their official capacity and as indi-
viduals; Stan Lawrence, Jerry Johnson,
and Daniel Lutkenhouse, Appellees–Ap-
pellees.

No. 15724.

Supreme Court of Hawai'i.

May 24, 1994.

260

Michael Jay Green, on the briefs, Honolulu, for appellant-appellant Mauna Kea Power Co., Inc.

Stanley H. Roehrig and Andrew P. Wilson of Roehrig, Roehrig, Wilson, Hara, Schutte & De Silva, on the briefs, Hilo, for appellees-appellees Stan Lawrence and Dr. Jerry Johnson.

Edwin P. Watson, Linnel T. Nishioka and Johnson H. Wong, Deputy Attys. Gen., on the briefs, Honolulu, for appellees-appellees Bd. of Land and Natural Resources, William W. Paty, Herbert Apaka, Jr., Herbert Arata, John Arisumi, Moses Kealoha and Atty. Gen. Warren Price, III.

Before MOON, C.J., LEVINSON and RAMIL, JJ., BURNS, C.J., Intermediate Court of Appeals Chief Judge, in place of KLEIN, J., Recused, and MILKS, Circuit Court Judge, Assigned by Reason of Vacancy.

RAMIL, Justice.

Mauna Kea Power Company, Inc. (MKPC) appeals the First Circuit Court's decision and order affirming the Board of Land and Natural Resources' (BLNR) decision denying MKPC's application for a permit to build a hydroelectric power plant on Honoli'i stream near Hilo, Hawai'i. MKPC contends that: (1) the BLNR improperly considered outside sources after a contested case hearing was held and that such action was not cured by reopening the hearing; (2) there was insufficient evidence to support the BLNR's finding that the proposed project would have a detrimental impact on the surf area; (3) the cir-

cuit court erred in finding that MKPC engaged in improper *ex parte* communications; and (4) the BLNR imposed an improper burden of proof on MKPC to prove that the project complied with the guidelines for building in a conservation district.

We disagree with these arguments and affirm the circuit court's decision upholding the BLNR's refusal to grant MKPC a permit to build a hydroelectric power plant on Honoli'i stream.

## I. *FACTS*

On September 12, 1988, MKPC filed a "Conservation District Use Application" with the BLNR to build a hydroelectric power plant on Honoli'i stream near Hilo, Hawai'i.[1] Because Honoli'i stream is located in a conservation district, MKPC was required to obtain a permit from the BLNR prior to constructing the proposed hydroelectric power plant.

MKPC submitted its application and filed an Environmental Impact Statement (EIS) with the BLNR. According to the EIS, the project included the construction of a dam-like structure called a "weir" approximately four miles from the mouth of Honoli'i stream. Once constructed, the weir would divert the stream's flow to power generators located next to the weir to generate electricity. The weir would allow a portion of the stream's flow to continue down Honoli'i stream through a ten-by-ten foot gap in the weir, but would obstruct some of the sediment flowing downstream causing it to collect behind the weir. The weir would also create a pool behind it that would be approximately fifteen feet deep, seventy-five feet wide, and three hundred and twenty-five feet long.

On March 9, 1989, the BLNR conducted a public hearing at which time requests for a contested case hearing were made by representatives of the Sierra Club and Life of the Land. Written petitions for a contested case hearing were submitted on March 20, 1989 by the Sierra Club and Life of the Land, as well as by Dr. Jerry Johnson, Mr. Stan Law-

rence, and Mr. Daniel Lutkenhouse (collectively Contestants). On July 13, 1989, the BLNR held a contested case hearing to address the potential impact of the hydroelectric power plant on sediment outflow at the mouth of Honoli'i stream and on recreational surfing at Honoli'i beach.

At the contested case hearing, the BLNR received evidence concerning the impact of the project on sediment flow down Honoli'i stream and its concomitant effect on the ocean wave action at the mouth of the stream. Expert testimony was submitted by both MKPC and Contestants on the potential impact of the project.

After the contested case hearing concluded, the attorney for Contestants Johnson and Lawrence made several written *ex parte* communications to members of the BLNR, sending them copies of news articles, reports, and a community petition against the project. In addition, on August 25, 1989, members of the BLNR visited the University of Hawai'i's Look Laboratory of Oceanic Engineering (Look Laboratory) to obtain additional information about the potential impact of the project and the feasibility of creating a model of the stream to study the impact of the proposed project. BLNR members, however, failed to inform either party of their visit to Look Laboratory.

To address concerns regarding the *ex parte* communications and the investigatory trip to Look Laboratory, the BLNR decided to reopen the contested case hearing. On October 26, 1989, the BLNR reopened the contested case hearing at which time counsel for each party addressed the propriety of the visit to Look Laboratory. Counsel for the parties also examined Dr. Hans–Jurgen Krock, the University of Hawai'i professor who met with board members at Look Laboratory. In addition, counsel for the parties addressed the propriety of the *ex parte* communications made by Contestants' attorney to members of the BLNR.

In a written decision dated December 1, 1989, the BLNR denied MKPC's application to build the hydroelectric power plant on

---

1. Honoli'i stream is approximately sixteen miles long and empties into Honoli'i beach park, a    popular surfing area near Hilo.

Honoli'i stream. MKPC thereafter appealed the BLNR's decision to the First Circuit Court. On October 7, 1991, the circuit court affirmed the BLNR decision. This timely appeal followed.

## II.  *DISCUSSION*

### A.  *Look Laboratory Visit*

MKPC contends that BLNR members improperly considered sources outside the record, when on July 13, 1989, board members made an independent visit to the Look Laboratory. Thus, MKPC urges reversal of the BLNR decision denying their Conservation District Use Application.

■■■ Hawai'i Revised Statutes (HRS) § 91–9(g) (1985) provides that "[n]o matters outside the record shall be considered by the agency in making its decision except as provided herein." Accordingly, administrative agencies may not consult sources outside the record when acting in an adjudicatory capacity. *Waikiki Shore, Inc. v. Zoning Bd. of Appeals,* 2 Haw.App. 43, 625 P.2d 1044 (1981); *Town v. Land Use Comm'n,* 55 Haw. 538, 524 P.2d 84 (1974). Where an agency consults outside sources, the right of a party to cross-examine those sources and present rebuttal evidence is violated. *Id.* at 549, 524 P.2d at 91.

■ However, where an agency conducts further proceedings such as a rehearing, and affords the parties the opportunity to cross-examine the outside source and to present rebuttal evidence, the improper effect of the agency consulting sources outside the record may be cured. *See Waikiki Shore,* 2 Haw. App. at 45, 625 P.2d at 1046 (court held that where agency consulted an outside source

after the hearing was closed without giving the opposing party an "opportunity to rebut," the agency decision should be vacated).

■ In the present case, members of the BLNR consulted an outside source after the contested case hearing was concluded. However, prior to the final agency decision, the BLNR conducted a rehearing to provide MKPC the opportunity to cross-examine Dr. Krock of the Look Laboratory and to present rebuttal evidence. Therefore, while the BLNR improperly consulted outside sources, the violation was cured by the subsequent rehearing proceeding.[2]

### B.  *Ex Parte Communications*  *by Contestants*

MKPC contends that letters sent by Contestants' attorney to BLNR members after the contested case hearing was held precluded fair decision-making by the agency and denied them due process of law.[3] MKPC further argues that such action was not cured by reopening the hearing. Thus, MKPC urges reversal of the BLNR decision.

In *Waikiki Shore,* the Intermediate Court of Appeals (ICA) addressed the effect of *ex parte* letters sent by an applicant for a zoning variance to the Zoning Board of Appeals (Zoning Board) after the hearing on the variance was concluded. Appellant argued that the receipt of the subject letter was procedurally fatal despite the Board's disclaimer that the letter was not considered in its decision-making. The ICA stated:

> This is not a case of first impression. The decision of the Supreme Court of Hawai'i in *Town v. Land Use Commission,* 55 Haw. 538, 524 P.2d 84 (1974) is on all fours

---

**2.** In the alternative, MKPC argues for the first time in this appeal that the reopening of the contested case hearing constitutes improper "rule-making" by the BLNR. However, because MKPC failed to raise this issue in the circuit court, this issue is deemed waived for the purposes of this appeal. *Airgo, Inc. v. Horizon Cargo Transport, Inc.,* 66 Haw. 590, 670 P.2d 1277 (1983).

**3.** The subject *ex parte* communications consist of three letters from Contestants' counsel to members of the BLNR. On August 4, 1989, Chairman Paty received a transmittal letter along with

a Hawai'i Tribune Herald article stating that the Hawai'i Counsel for Economic Opportunity had voted to oppose the Honoli'i project. A similar letter with the same enclosure was also sent to BLNR member Herbert Apaka. On August 21, 1989, Chairman Paty and BLNR members Herbert Arata and John Arisumi were sent a transmittal letter along with signed petitions against the project. On September 5, 1989, Chairman Paty and BLNR members Herbert Apaka and John Arisumi were sent a transmittal letter along with a paid advertisement containing excerpts from the testimony of Contestants' witnesses at the July 13, 1989 hearing.

with this case. In that case, there was an appearance by a party before a meeting of the Commission after the public hearing had been closed, which the opposing party was given *no opportunity to rebut.*... Despite the agency's disclaimer that those matters had any influence upon it, the Supreme Court ... reversed and remanded to the agency. In this case, faced with nearly identical facts, we do likewise, as, indeed, we are bound to do by the doctrine of *stare decisis.*

2 Haw.App. at 44–45, 625 P.2d at 1046.

In both *Waikiki Shore* and *Town,* the reviewing court reversed and remanded the agency determination due to *ex parte* communications where the opposing party was given no opportunity to rebut. *Waikiki Shore,* 2 Haw.App. at 45, 625 P.2d at 1046; *Town v. Land Use Comm'n,* 55 Haw. at 549, 524 P.2d at 91.

■ In. the present case, the record indicates that the BLNR reopened the hearing to expressly allow MKPC an opportunity to rebut the *ex parte* communications. MKPC contends, however, that although MKPC was provided copies of the subject *ex parte* communications prior to the reopened hearing, MKPC "never knew that the same letters and hundreds of petition signatures were sent by Contestants' counsel to the other BLNR members," and it therefore was precluded from effectively responding.

On review of the BLNR's ruling, the circuit court stated:

> Appellant complains that seven ... letters were made part of the record after [the] conclusion of the reopened hearing which show improper *ex parte* communications between the attorney for Contestants Lawrence and Johnson and an individual who was a witness for them at the hearing and members of the Board and its Chair-

man.... Via transmittal letters, Contestants Lawrence and Johnson's counsel ... sent a news article, news report and a community petition to Board Members and the Chairman. After an exhaustive review by this Court, it is clear and this Court finds that Appellant had the same or substantially the same information as is contained in such purported *ex parte* communications prior to the reopened hearing on October 26, 1989. By that time, Appellant had knowledge of the Look Lab [visit] as well.

It is undisputed that MKPC was provided copies of the subject *ex parte* communications prior to the reopened hearing.[4] The fact that MKPC may have been unaware that the same letters and petition signatures were also sent to other BLNR members did not in any way preclude MKPC from effectively responding to the contents of the *ex parte* communications. Therefore, because the reopened hearing provided MKPC an opportunity to rebut the *ex parte* communications, we cannot conclude that MKPC was denied due process of law.

### C. Whether the BLNR Decision Was Supported by Substantial Evidence?

■ MKPC argues that the BLNR decision denying its application for a conservation district use permit was not supported by substantial evidence. Specifically, MKPC contends that, while evidence proffered by Contestants may have established a possibility that the proposed project would detrimentally effect the surf shoal, Contestants failed to prove by a preponderance of evidence that this impact was "more likely than not."[5] We disagree.

4. MKPC contends that it was not provided a copy of Chairman Paty's handwritten note to Contestants' counsel prior to the reopened hearing and thus did not have an opportunity to respond. This handwritten note, however, was never delivered to Contestants' counsel. Deputy Attorney General Johnson Wong, stated in his affidavit that he advised Chairman Paty not to send the note. In addition, Contestants' counsel also filed an affidavit stating that he never re-

ceived the handwritten note. Therefore, MKPC's argument is without merit.

5. HRS § 91–10(5) (1985) governs contested case hearings and provides: Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence.

It is well settled that in an appeal from a circuit court's review of an administrative decision, the appellate court will utilize identical standards applied by the circuit court. *Dole Hawaii Division–Castle & Cooke, Inc. v. Ramil,* 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990). Judicial review of contested cases is governed by HRS § 91–14 (1985), which provides in relevant part:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> . . . .
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.]

The BLNR rejected MKPC's application based on its factual determination that MKPC's hydroelectric power plant would disrupt the sediment outflow of Honoli'i stream and irreversibly affect the ocean wave action at Honoli'i beach. Based on its review of the record, the BLNR concluded in relevant part:

> 13. The proposed project's disruption of the natural sediment transport system of Honoli'i Stream conflicts with the objective of the limited subzone and, therefore, does not meet the guidelines set out in Hawai'i Administrative Rules (HAR) § 13–2–21(b)(1).
>
> 14. The proposed project's impact upon the surfing beach conflicts with the objective of the Resource subzone and, therefore, does not meet the guideline set out in HAR § 13–2–21(b)(1).
>
> 15. The proposed project's potential destruction of an invaluable recreational resource conflicts with the purpose and intent of the State's conservation district and, therefore, does not meet the guideline set out in HAR § 13–2–21(b)(4).

The record provides ample evidence to support the BLNR's decision. Although MKPC's experts testified that there would be no effect on the surfing area due to sediment runoff, Albert Hee, president of MKPC, admitted that the EIS submitted by MKPC did not address in great detail the agency's concern about the effect of the project on sediment movement.

In addition, Dr. Paul Ekern, a hydrologist who testified in opposition to the project, stated that the proposed diversion of the stream flow could reduce the "bedload transport capacity" of the stream by twenty-five to thirty percent. Dr. Ekern also testified that more studies were needed regarding: (1) the bedload retention capacity of the weir pool; (2) the sediment transport to the stream mouth; and (3) identifying where beach material comes from as between the stream and the coastal rocks.

Dr. Douglas Inman, a professor of oceanography at the University of California Scripps Institute of Oceanography, opined that Honoli'i stream is a major source of sediment and that the weir would trap the bedload sediment and consequently affect the surf area. Similarly, Dr. Frans Gerristen, a civil engineer concentrating in coastline studies, testified that the project could disrupt the flow of sediment to the mouth of the river which would change the balance of sediments and affect the surf shoal and coastline.

Based on the reliable, probative, and substantial evidence set forth above, we cannot conclude that the BLNR's findings were clearly erroneous. Accordingly, we find no merit in MKPC's argument that Contestants failed to prove by a preponderance of evidence that the proposed project would have a detrimental affect on ocean wave action at Honoli'i beach.

### D. *Ex Parte Communications by MKPC*

MKPC contends that the circuit court erred in finding that MKPC had engaged in improper *ex parte* communications. Although the circuit court did not identify the specific *ex parte* communication, the record contains evidence of *ex parte* communications by MKPC's president. For instance, in a letter dated June 21, 1989 to BLNR Chairman William Paty, MKPC's president objected to a continuation of the hearing and provided "other facts" to garner support for the

proposed project. Therefore, pursuant to *Waikiki Shore* and *Town, supra,* we cannot agree that the circuit court determination that MKPC engaged in improper *ex parte* communications is clearly erroneous.

### E. *MKPC's Burden of Proof*

Finally, MKPC contends that the BLNR imposed an improper burden of proof on MKPC to demonstrate that its application met the requisite conservation district guidelines. Specifically, MKPC asserts that the BLNR conclusion that "there is an uncertainty regarding the impact of the proposed project on surfing conditions [at] Honoli'i beach and this uncertainty cannot be answered with complete assurance by any study" demonstrates that MKPC was required to meet a higher standard of proof than the statutorily authorized preponderance of evidence standard.

The BLNR concluded in relevant part that "[MKPC] bears the burden of proving, by a preponderance of the evidence, that the proposal meets the guidelines and conditions set out in § 13–2–21, Hawai'i Administrative Rules [HAR]."

HAR § 13–2–21(b) pertaining to conservation districts, states, in part, that in reviewing applications the following guidelines shall apply:

(1) All applications shall be reviewed in such a manner that the objectives of the subzone or subzones are given primary consideration.

\* \* \* \* \* \*

(4) All applications shall meet the purpose and intent of the State's conservation district.

The conservation district lands in the instant case are contained within "limited and resource subzones." The objective of a "limited subzone" is to limit uses where natural conditions suggest constraints on human behavior. *See* HAR § 13–2–12(a). The objective of a "resource subzone" is to develop, with proper management, areas to ensure sustained use of the natural resources of those areas. *See* HAR § 13–2–13(a).

■ The term "conservation" means a practice, by both government and private landowners, of protecting and preserving, by judicious development and utilization, the natural and scenic reserves attendant to land, including territorial waters within the State, to ensure optimum long-term benefits for the inhabitants of the State. *See* HAR § 13–2–1.

■ MKPC contends that it met its burden of proof and established by a preponderance of evidence that no detrimental impact on Honoli'i beach was likely to occur. To support its position, MKPC asserts that the BLNR's acceptance of MKPC's final EIS established a *prima facie* case of no negative impact on the surf area.

■ Regardless, the EIS is merely an informational document whose acceptance neither implies nor presumes approval of the conservation district use application. *See* Department of Health, Environmental Impact Statement Rules § 11–200–2 (1993). *See also* HRS § 343–2 (1985 & Supp.1992).

Moreover, the Contestants submitted substantial evidence to rebut MKPC's *prima facie* case. The BLNR's determination that the project would alter the transfer of sediment to the ocean and would consequently affect Honoli'i beach as an "invaluable recreational resource" in derogation of the objectives of the limited and resource subzones is supported by substantial evidence. For instance, the BLNR found that the proposed weir would change the stream's natural flow regime and total sedimentation discharge rate. The BLNR also found that the amount of bedload sediment that would accumulate behind the weir was unknown. This issue was addressed by an engineering expert, Dr. Alexander Tseng, who testified that a study should be conducted to determine the amount of sediment that would collect behind the weir. In addition, the BLNR concluded that the assertion in the EIS that there would be no effect on the surf shoal at Honoli'i beach was unsupported. Therefore, the BLNR did not hold MKPC to an improper burden of proof.

For the reasons set forth above, the decision of the circuit court is affirmed.