THEO R. DiTULLIO, Plaintiff-Appellant, *v.* THE HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED, a Hawaii corporation, and HONOLULU BOARD OF REALTORS, a Hawaii non-profit corporation, Defendants-Appellees

NO. 6523

AUGUST 18, 1980

HAYASHI, C.J., BURNS, J., AND
CIRCUIT JUDGE KANBARA IN PLACE OF
ASSOCIATE JUDGE PADGETT, DISQUALIFIED

OPINION OF THE COURT BY BURNS, J.

Plaintiff-Appellant Theo R. DiTullio ("DiTullio") appeals from summary judgment entered in favor of Defendants The Hawaiian Insurance & Guaranty Company, Limited ("HIG") and Honolulu Board of Realtors.

DiTullio's declaratory judgment suit alleged that the Board and HIG had a duty to defend him in a libel suit against him.

The issues on appeal are whether any genuine issue as to a material fact existed and whether the Board and HIG were entitled to summary judgment as a matter of law. *Namauu v. City and County of Honolulu*, 62 Haw. 358, 614 P.2d 943 (1980).

Given the posture of this case on appeal, we will consider the facts in the light most favorable to DiTullio. *Namauu, supra*. Inferences to be drawn from the record will be viewed in the light most favorable to DiTullio. *Lau and Lau v. Bautista*, 61 Haw. 144, 598 P.2d 161 (1979); *City and County of Honolulu v. Toyama*, 61 Haw. 156, 598 P.2d 168 (1979).

DiTullio, a realtor-developer, was the Chairman of the Board's Professional Standards Committee, an appointive non-paying position. As committee chairman, DiTullio received from members of the public a minimum of five calls a week concerning real estate matters, excluding calls that related to formal complaints. All calls received by DiTullio from the general public were referred to him by the Board's office.

John Knox ("Knox"), an *Advertiser* reporter, was investigating the Makaha Surfside condominium development. On May 17, 1971 Knox telephoned the Board seeking "an authoritative quote with regard to the propriety or usualness of the Makaha Surfside financial arrangements". A

secretary referred Knox to DiTullio. Knox telephoned Di-Tullio and they talked for about half an hour.

Knox began his conversation with DiTullio by telling him that he (Knox) had been referred to DiTullio by the Board because DiTullio was the Chairman of its Professional Standards Committee.

Knox's article in the next day's *Advertiser* contained the following statement:

THE ETHICS chairman for the Honolulu Board of Realtors yesterday said the deal put together by realtors Ho and Nobuta "has all the appearances of a scheme, rather than a normal, solid investment."

DiTullio's quoted statement had actually been given in response to a hypothetical question probably phrased as follows:

Is it normal practice to give investors in a condominium project 24% discounts on the price of apartments and maintenance fees?

In Civil 34165 Ho and Nobuta and their affiliated companies and corporations sued Knox, DiTullio and the *Advertiser* for libel and slander.

In this case, DiTullio filed suit for declaratory judgment that he was entitled to be defended in Civil 34165 by the Board and HIG and to be indemnified by them in the amount of any judgment that might be entered against him.

Thereafter, Civil 34165 was settled and dismissed. DiTullio was not required to pay any sum to obtain such settlement and dismissal. Thus, DiTullio's demand for indemnity is moot. All that remains is DiTullio's claim for the cost of defending himself.

I. DiTullio's claim against the Board is premised upon Article XVIII of its By-Laws:

### Article XVIII — Indemnification

No officer, director or committee member of this Board shall personally be liable for any act or omission done or committed during the course of performing his

duties as such officer, director or committee member. In the event that a legal proceeding for such act or omission is initiated against an officer, director or committee member, whether or not he is then in office, the Board shall assume the defense of such proceeding. The Board shall indemnify any officer, director, or committee member for all costs and expenses reasonably incurred by or imposed upon him in connection with or resulting from any such proceeding.

The Board has a duty to defend if DiTullio's statement to Knox as quoted in the *Advertiser* was an "act or omission done or committed during the course of performing his duties" as Chairman of the Board's Professional Standards Committee.

The Board argues:

1. That it is obligated to defend DiTullio only for those actions which its By-Laws expressly authorized him to take as Chairman of its Professional Standards Committee;

2. That its By-Laws gave the committee the following jurisdiction:

Article VII — Professional Standards Committee

\*   \*   \*   \*   \*

Section 3. Jurisdiction. The Committee shall have power and authority to hear and determine all matters:

(a) Involving a charge properly made of unethical conduct on the part of any member.

(b) Involving business disputes between members of the board.

\*   \*   \*   \*   \*

3. That Ho and Nobuta and their affiliated companies and corporations were not members of the Board.

4. That DiTullio was not authorized to render opinions about the investment quality of a condominium project being developed by non-members of the Board.

We disagree with the Board's contention that as a matter

of law DiTullio's authority did not extend beyond the express language of the By-Laws.

We adopt the principle stated in 2 FLETCHER, *Cyclopedia Corporations*, Sec. 444:

> Corporate authority may be shown in many different ways. . . . In the absence of any statute, charter or by-laws requiring it, it is not necessary that there be a writing or a vote or resolution of the board of directors or trustees in order to confer authority on persons to bind the corporation; nor need it be evidenced by the minutes of its board of directors or by a formal instrument in writing; but his authority to do an act may be conferred by parol, and may be inferred from circumstances or implied from the acquiescence of the corporation or its agents in a general course of business. . . .
>
> [Footnotes omitted.]

*See Cummings v. Pioneer Bldg. & Loan Ass'n.*, 18 Haw. 349 (1907); *Scott v. Hawaiian Tobacco Plantation*, 21 Haw. 493 (1913); *Ripley & Davis v. Kapiolani Estate, Limited*, 22 Haw. 86 (1914); *Kealoha v. Halawa Plantation, Limited*, 24 Haw. 579 (1918); *Eastern Iron & Metal Co. v. Patterson*, 39 Haw. 346 (1952).

On the record before us, we hold that the extent of Di-Tullio's authority is an issue of material fact and that conflicting evidence of record precluded summary judgment on the issue.

The fact that DiTullio's statement may have been libelous is not relevant. The issue is whether the statement, libelous or not, was made by DiTullio during the course of performing his duties as Chairman of the Board's Professional Standards Committee.

II. DiTullio's claim against HIG is premised upon the following language in its policy covering the Board:

I. COVERAGE P — PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as

damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

\* \* \* \* \*

Group B — the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterances in violation of an individual's right of privacy; . . .;

\* \* \* \* \*

. . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, . . .

\* \* \* \* \*

II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

\* \* \* \* \*

(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

\* \* \* \* \*

HIG has a duty to defend (1) if DiTullio made his statement "in the conduct of" the Board's business; and (2) if DiTullio was an "executive officer, director or stockholder" of the Board; and (3) if DiTullio made his statement "while acting within the scope of his duties" as executive officer, director or stockholder.

HIG argues that as a matter of law DiTullio does not have any of the three qualifications. We disagree. We hold that

they are all genuine issues of material fact which precluded the granting of summary judgment.

Our ruling *supra* on the question whether DiTullio's statement was made "during the course of performing his duties" applies to the question whether his statement was made "in the conduct" of the Board's business.

DiTullio admits that he was not a "director" within the meaning of the language in the policy. He contends that he comes within the meaning of the word "stockholder". HIG responds that the Board is a non-profit corporation and that non-profit corporations do not have "stockholders", they have "members".

> When the terms of a contract are definite and unambiguous there is no room for interpretation. It is only when the language used by the parties leaves some doubt as to the meaning and intention that the courts will apply the rules of construction and interpretation in an effort to ascertain the intention of the parties to the contract.

*Hackfield and Co. v. Grossman*, 13 Haw. 725 at 729 (1902).

In the context of this contract between the Board and HIG, the word "stockholders" is ambiguous and its use requires further inquiry to determine the intention of the parties. Nothing in the record thus far indicates why the Board and HIG used the word "stockholders" when the Board does not have "stockholders". Where there is an ambiguity, parol evidence is admissible to explain the intent of the parties, and intent then becomes a question for the trier of fact. *McClung v. Thompson*, 401 F.2d 253, 257-258 (8th Cir. (1968).

DiTullio also contends that he comes within the meaning of the phrase "executive officer". That phrase is not defined in the policy and its meaning has been the subject of much case law. *See* Annotation, 39 ALR3d 1434 (who is "executive officer" of insured within coverage of liability insurance policy), Annotation, 23 ALR3d 1282, § 4[b] at 1293 (who is "executive" officer under a liability policy issued to a municipal corporation or similar governmental body), *Bruce v. Traveler's Insurance Company*, 266 F.2d 781 (5th Cir. 1959), *Guillory v. Aetna Insurance Company*, 415 F.2d 650 (5th

Cir. 1969), *Vega v. Southern Scrap Material Company, Inc.*, 517 F.2d 254 (5th Cir. 1975).

Like "stockholders", the phrase "executive officer" in this contract between the Board and HIG is ambiguous. On the record before us, the intent of the parties in using the phrase is a genuine issue of material fact.

Reversed and remanded for proceedings consistent with this opinion.

*John H. R. Plews (Mark P. Bleuenstein* with him on the brief; *Anthony, Hoddick, Reinwald, & O'Connor* of counsel) for plaintiff-appellant.

*George W. Playdon, Jr. (Davis, Playdon & Gerson* of counsel); *Charles H. Witherwax* and *Ray L. Anderson* on the brief *(Davis, Witherwax, Playdon & Gerson* of counsel) for Defendant-Appellee The Hawaiian Insurance & Guaranty Company, Limited.

*William H. Dodd (Williamson B. C. Chang* with him on the brief; *Chun, Kerr & Dodd* of counsel) for Defendant-Appellee Honolulu Board of Realtors.