Lloyd FARR; Morris Markley; Sophia Farr; Kevin Farr; Kelly Farr; Walter J. Stotler, Jr.; Cathy Stotler; Francis Wellnitz; Mary M. Wellnitz; Dema Marsh; Marlene Markley; Walter Markley; Marcia Guard; Donald G. Guard; Dan DeLong; Mary Lou De-Long, Appellants,

v.

FARM BUREAU INSURANCE COMPANY OF NEBRASKA, Appellee.

No. 94–2143.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1995.

Decided Aug. 9, 1995.

Alen V. Johnson, Topeka, KS (argued), for appellant.

Gary J. Nedved, Lincoln, NE (argued), for appellee.

Before MAGILL and HANSEN, Circuit Judges, and GOLDBERG,* Judge.

MAGILL, Circuit Judge.

Lloyd Farr, Morris Markley and thirteen other plaintiffs appeal the district court's[1] judgment in favor of Farm Bureau Insurance Company of Nebraska (Farm Bureau) in their suit to recover attorney's fees incurred because of Farm Bureau's allegedly improper refusal to defend them in an earlier lawsuit. We affirm.

## I. BACKGROUND

Farr and Markley are minority shareholders in Designer Phosphate and Premix International (DPPI). Both have served as president of the corporation and as members of the board of directors. Another group of shareholders, directors and officers consisting of Tim Tobiason, Emil Tobiason and Wayne Loeske (the Tobiason group) held the majority of DPPI stock. In October 1990, after a dispute over the management of DPPI, Markley and other minority shareholders filed suit against DPPI and the Tobiason group, alleging: (1) several types of securities violations; (2) common law fraud; (3) negligent misrepresentation; (4) breach of fiduciary duties; and (5) negligence.

In October 1991, DPPI and the Tobiason group counterclaimed against Markley and filed a third-party claim against Farr, both of whom were alleged to have acted as agents for the remaining plaintiffs, thereby rendering the remaining plaintiffs vicariously liable for the torts committed by Farr and Mark-

---

* THE HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

1. The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

ley. The counterclaims and third-party complaint asserted six theories of recovery: (1) breach of fiduciary duty; (2) negligence; (3) negligent misrepresentation; (4) fraud; (5) misappropriation of trade secrets; and (6) indemnification and contribution from Farr and Markley for any judgment against DPPI. The only alleged injury was suffered by DPPI.

Through discovery, Farr and Markley learned that Farm Bureau had issued three liability policies to DPPI. On December 31, 1991, believing that these policies imposed upon Farm Bureau a duty to defend them against the counterclaims and third-party complaint, Farr and Markley tendered their defense to Farm Bureau. Farm Bureau denied coverage and refused to provide a defense. The litigation was eventually settled and Farr and Markley filed this diversity action against Farm Bureau to recover the attorney's fees expended in their defense against DPPI's counterclaims and third-party complaint in the first lawsuit. After a bench trial, the district court found that Farm Bureau had no duty to defend under either Coverage A ("bodily injury" and "property damage") or Coverage B ("personal injury" and "advertising injury") and entered judgment against Farr and Markley. They timely appeal, raising issues concerning the scope of Coverage B in two of the three policies.

## II. DISCUSSION

Farr and Markley argue that Farm Bureau wrongfully refused to defend them against the counterclaims and third-party complaint involved in the first litigation. In order for Farm Bureau's refusal to be wrongful, Farm Bureau must have been under a duty to defend Farr and Markley. Farr and Markley attempt to find such a duty in two provisions of the Farm Bureau policies. First, they find such a duty in the policies' coverage of "personal injury." Alternatively, they claim that the policies' coverage of "advertising injury" creates such a duty. We examine each issue in turn, after addressing some preliminary matters.

### A. Applicable law and standard of review

■ The substantive issues in this case are governed by law of the State of Nebraska, the state in which the district court sits, because jurisdiction is based on diversity of citizenship. *B.B. v. Continental Ins. Co.*, 8 F.3d 1288, 1291 (8th Cir.1993). In determining the law of the State of Nebraska, we are bound by the decisions of the Nebraska Supreme Court. If the Nebraska Supreme Court has not addressed the issue, we must determine what that court would probably hold were it to decide the issue. In making this determination, we may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data. *Id.*

■ We review de novo the district court's interpretation of Nebraska law. *Polytech, Inc. v. Affiliated FM Ins. Co.*, 21 F.3d 271, 273 (8th Cir.1994) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991)). We also review de novo the district court's application of Nebraska law to the interpretation of this insurance contract. *Benedictine Sisters v. St. Paul Fire & Marine Ins. Co.*, 815 F.2d 1209, 1211 (8th Cir.1987).

### B. The duty to defend

■ An insurer's duty to defend is distinct from its duty to indemnify a loss. The nature of the duty to defend is defined by the insurance policy as a contract. *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484, 487 (1993); *Union Ins. Co. v. Land & Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773, 776 (1995). Under Nebraska law, an insurer has a duty to defend its insured whenever the facts give rise to the potential of liability under the policy. However, if the insurer has no potential liability under the policy, the insurer may properly refuse to defend its insured. *Allied Mut. Ins. Co.*, 502 N.W.2d at 487; *Union Ins. Co.*, 529 N.W.2d at 776. In addition, both policies issued by Farm Bureau specifically address the duty to defend and define it in terms of the coverage of the policy. Paragraph II(A)(1)(a) of the Commercial Policy issued by Farm Bureau provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.... We will have the right and duty to defend any "suit" seeking those damages.

App. at 17. Similarly, Paragraph II of the Business Protector Umbrella Liability Policy (Umbrella Policy) states:

With respect to any occurrence not covered by the underlying policies listed in the schedule of underlying insurance or any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy except for the amount of the retained limit specified in the declarations, the company shall:

(a) defend any suit against the insured alleging such injury or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent....

App. at 21. Accordingly, we must determine whether the injuries alleged in the counterclaims and third-party complaint potentially fall within the coverage of either Farm Bureau policy.

## C. Scope of coverage

### 1. Personal injury

The Commercial Policy states its coverage as:

This insurance applies to "personal injury" only if caused by an offense:

....

(2) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by you or for you.

App. at 17. The policy explains that " 'you' and 'your' refer to the Named Insured shown in the Declarations." App. at 16. The Declarations list only the corporation Designer Premixes, Inc.[2] Thus, only the corporation

is a Named Insured, and "your business" refers to DPPI's business.

■ The Commercial Policy defines "personal injury" to include slander and disparagement. App. at 20. The counterclaims and third-party complaint alleged that Farr and Markley acted to cripple DPPI financially and then misrepresented DPPI's financial condition to a potential purchaser. These claims were styled as breach of fiduciary duty, negligence, negligent misrepresentation, fraud, and misappropriation of trade secrets. "[T]he rule is well settled in Nebraska that an insurer's duty to defend an action against the insured must, in the first instance, be measured by the allegations of the petition against the insured." *Allied Mut. Ins. Co.*, 502 N.W.2d at 487 (internal quotation omitted). However, an insurer cannot rest solely on the allegations of the petition. Rather, the insurer must defend the action whenever "it ascertains facts which give rise to the potential of liability under the policy." *Id.* (internal quotation omitted). We assume without deciding that the facts giving rise to the counterclaims and third-party complaint would satisfy the policy's definition of "personal injury." *See Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.*, 832 F.2d 1037, 1044–45 (7th Cir. 1987).

Paragraph II(1)(c) of the policy provides that directors and officers such as Farr and Markley are covered as insureds, "but only with respect to their duties as [DPPI's] officers or directors." App. at 18. Thus, the issue of coverage distills to whether the injuries alleged in the counterclaims and third-party complaint arose "out of the conduct of [DPPI's] business," or out of Farr and Markley's execution of "their duties as [DPPI] officers and directors" so that there was a potential for liability under Farm Bureau's Commercial Policy, thereby obligating Farm Bureau to defend Farr and Markley.

**2.** On or about January 24, 1989, DPPI was formed by a consolidation of Designer Premix, Inc., Designer Premix II, Inc., Designer Leasing, Inc. and Designer Leasing of Kentucky, Inc. As it was not mentioned by the parties, we have not considered any effect that the consolidation or

the difference between the name of the corporation as it appears in the Declarations (Designer Premixes, Inc.) and as it appears in the first litigation (Designer Phosphate and Premix International, Inc.) might have on Farm Bureau's duty to defend.

The provisions of the Umbrella Policy are similar. Paragraph I of the Umbrella Policy defines the coverage of the policy:

The company [*i.e.,* Farm Bureau] will indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated which the insured may sustain by reason of liability imposed on the insured by law, or assumed under any contract or agreement by the named insured or by any officer, director, stockholder or employee of the named insured while acting within the scope of his duties as such, for damages because of:

(a) Personal Injury

. . . .

(c) Advertising Liability

caused by or arising out of an occurrence happening anywhere in the world.

App. at 21. Again, under the Umbrella Policy, the issue is whether the injuries alleged in the counterclaims and third-party complaint were caused by Farr's and/or Markley's actions "while acting in the scope of [their] duties" so that there was a potential for liability under Farm Bureau's Umbrella Policy, thereby obligating Farm Bureau to defend Farr and Markley.

We believe that neither the Commercial Policy nor the Umbrella Policy provides coverage for a situation in which the corporate insured suffers injury arising from a breach of duty by corporate directors and/or officers. Thus, the counterclaims and third-party complaint that alleged such injury do not give rise to a potential for liability under these policies, and Farm Bureau is under no duty to defend such a suit. Both policies anticipate injuries caused (either to the corporation or to third parties)[3] by cor-

porate officers acting on behalf of the corporation. The policies are intended to cover injuries caused by corporate officers when these officers are properly carrying out their duties to the corporation and are designed to protect the officer who acts to advance the business interests of the corporation, not the officer who acts in a manner that is antagonistic toward the corporation's business interests. It follows that the policies provide no coverage for injuries arising from a corporate officer's breach of a duty owed to the corporation.

It is hornbook law that an officer or director of a corporation owes a fiduciary duty to the corporation. *Doyle v. Union Ins. Co.,* 202 Neb. 599, 277 N.W.2d 36, 41 (1979); 3 *Fletcher Cyc. Corp.* § 838 (perm. ed. 1986). The duties include the duty of loyalty, *Anderson v. Clemens Mobile Homes, Inc.,* 214 Neb. 283, 333 N.W.2d 900, 904 (1983), and the duty of prudence, *Doyle,* 277 N.W.2d at 41. The counterclaims and third-party complaint allege various intentional torts and negligence. We believe that each of the torts pleaded in the counterclaims and third-party complaint requires a breach of one or more fiduciary duties by Farr and Markley. Any injuries caused by a breach of fiduciary duty by Farr and/or Markley cannot be said to be "while acting in the scope of [their] duties as [officer, director, stockholder or employee of DPPI]." Nor can it be said to be "with respect to their duties as [DPPI's] officers or directors."[4]

Our interpretation of the policies' language is confirmed by the overall purpose and intent of the policies. Neither the Commercial Policy nor the Umbrella Policy is a Directors and Officers (D & O) policy. Both the Com-

---

**3.** The district court reasoned that implicit in the term "offense" (which appears in the Commercial Policy's definition of "personal injury" and "advertising injury") was the idea that the "offense" would be committed against another person or organization. We find nothing in the definition of offense that requires the victim to be a person (or organization) other than the perpetrator of the offense. *See* Black's Law Dictionary 975 (5th ed. 1979). Moreover, we note that the district court's interpretation would transform the article "a" into "another." We decline to adopt such an interpretation in the absence of an exclusion requiring such a construction.

**4.** Farm Bureau argues that there is no coverage because slander and disparagement do not fall within the scope of the duties of a corporate officer or director. However, this is not the proper inquiry. Rather, the proper inquiry is whether Farr and Markley were acting on behalf of the corporation (as opposed to themselves) when they engaged in the alleged behavior. *See DiTullio v. Hawaiian Ins. & Guar. Co.,* 1 Haw. App. 149, 616 P.2d 221, 224–25 (1980).

mercial Policy and the Umbrella Policy are primarily intended to cover any liability of DPPI to a third party. There is simply no indication of any intent for these policies to cover internal disputes among shareholders. Moreover, the result we reach is consistent with that reached by other courts in similar cases. *See Transamerica Ins. Co. v. Sayble*, 193 Cal.App.3d 1562, 239 Cal.Rptr. 201 (1987) (broadly worded malpractice policy did not impose duty to defend in dispute between law partners); *Potomac Ins. Co. of Ill. v. Peppers*, 890 F.Supp. 634 (S.D.Tex.1995) (Commercial General Liability Policy did not impose duty to defend against allegations of intentional misconduct by business partner). Thus, we conclude that there is no potential for liability under the "personal injury" provisions of the policies, and that Farm Bureau had no duty to defend.

## 2. Advertising injury

■ Farr and Markley argue that the injuries alleged in the counterclaims and third-party complaint are covered as "advertising injury." The Commercial Policy provides:

> This insurance applies to "advertising injury" only if caused by an offense committed:
> . . . .
> (2) In the course of advertising your goods, products or services.

App. at 17. The Umbrella Policy also covers "advertising liability" which is defined as certain specified types of "liability arising out of the named insured's advertising activities." App. at 22. We assume without deciding that (1) the injuries alleged in the counterclaims and third-party complaint would constitute advertising injury, and (2) that Nebraska would define advertising broadly. *See Tews Funeral Home*, 832 F.2d at 1045 (business torts requiring intent or wilfulness constitute advertising offenses); *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 696 F.Supp. 434, 439–40 (D.Minn.1988) (advertising encompasses any form of solicitation), *aff'd*, 929 F.2d 413 (8th Cir.1991). However, the record does not contain any evidence to support the conclusion that the activities of Farr and Markley constituted advertising, even under a broad definition. Accordingly,

as there is no indication that the injuries arose from advertising activities, there is no potential liability under the Farm Bureau policies, and Farm Bureau has no duty to defend.

## III. CONCLUSION

We hold that the language of the Farm Bureau policies does not cover injuries caused by a breach of duty by a corporate director or officer. Thus, because the counterclaims and third-party complaint in the first litigation were premised upon one or more breaches of duty, these policies do not impose upon Farm Bureau a duty to defend Farr and Markley against the counterclaims and third-party complaint. Accordingly, Farr and Markley are not entitled to attorney's fees, and the judgment of the district court is affirmed.